In re Rachel E. FISHER, Debtor.

CITY OF CHICAGO, Appellant,

v.

Rachel E. FISHER, Appellee.

No. 96 C 6432.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 7, 1997.

3. *See supra* note 1.

Mark J. Ryan, City of Chicago Law Department, and Alexis Nicole Gabay, Chicago, IL, for Appellant.

Ann Marie Waxman Lopez and Jeanne Ann Pennebaker, Zalutsky & Pinski, Chicago, IL, for Appellee.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

After Debtor Rachel Fisher filed the Chapter 13 bankruptcy petition that started these proceedings, she incurred but ignored ten parking tickets issued by the City of Chicago. Eventually, the City immobilized, towed, and destroyed her car. In the bankruptcy court, Fisher argued that the City's actions violated a provision of the automatic stay, 11 U.S.C. § 362(a)(3), that protects property of the bankruptcy estate. In this appeal, taken pursuant to 28 U.S.C. § 158(a)(1), the City of Chicago challenges the bankruptcy court's decision holding the City liable for violating the stay. *In re Fisher*, 198 B.R. 721 (Bankr.N.D.Ill.1996). For the reasons discussed below, after reviewing the bankruptcy court's factual findings for clear error and conclusions of law *de novo*,[1] we reverse.

### I.

When proceeding under Chapter 13 of the Bankruptcy Code, a debtor typically seeks to reorganize her debts and pay creditors from future income, an approach different from a Chapter 7 bankruptcy in which the debtor's property is liquidated and creditors are paid from the liquidation's resulting funds. *Compare* 11 U.S.C. § 1322(a)(1) (Chapter 13 adjustment of debts requires

---

1. FED.R.BANKR.P. 8013; *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994); *Aetna Bank v. Dvorak,* 176 B.R. 160, 163 (N.D.Ill.1994).

dedication of future earnings necessary to execute plan) *with* § 704(1) (Chapter 7 trustee's duties include "collect[ing] and reduc[ing] to money the property of the estate"). Rather than liquidate the debtor's assets, Chapter 13 generally provides for the debtor to "remain in possession of all property of the estate." § 1306(b).[2] In order to execute the reorganization, the debtor in Chapter 13 must file a plan that meets certain requirements, § 1322, and must seek confirmation of the plan by the bankruptcy court, § 1325. After completing the plan, the debtor receives a discharge of the debts provided for by the plan. § 1328(a).

Fisher's Chapter 13 petition and proposed plan were filed on June 22, 1994, and the bankruptcy court confirmed her plan on August 16, 1994. Prior to filing the petition, Fisher was indebted to the City for unpaid parking tickets. *Fisher*, 198 B.R. at 723. According to the City's brief on appeal, and undisputed by the debtor, she received another ten parking tickets between June 27, 1994 and March 30, 1995. City's Br. at 2 & n. 1; *see Fisher*, 198 B.R. at 723. After Fisher failed to respond to any tickets, the City immobilized her car and towed it to the auto pound pursuant to an ordinance authorizing such action after a car owner accumulates five unpaid parking tickets. *Id.* (citing Chicago, Illinois, MUNICIPAL CODE § 9–100–120(b)). On June 7, 1995, after following the procedures required for disposal of unclaimed, impounded vehicles, § 9–92–100(a), the City destroyed the car and sold it for scrap, § 9–92–100(b). *Fisher*, 198 B.R. at 723.

In March 1996, Fisher moved for a rule to show cause, arguing that the City's actions violated the automatic stay that protects "property of the estate." Property of the estate is protected by the automatic stay of 11 U.S.C. § 362, which provides that a bankruptcy filing "operates as a stay" of numerous acts, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," § 362(a)(3). In a

thorough opinion, the bankruptcy court held that the City violated the automatic stay and awarded Fisher the value of her car. On appeal, the City contends that the bankruptcy court erred in holding that Fisher's car remained property of the estate after her Chapter 13 plan was confirmed. We now turn to that question.

## II.

In a bankruptcy proceeding, the "property of the estate" generally includes the debtor's property "as of the commencement of the case." 11 U.S.C. § 541(a)(1). In a Chapter 13 proceeding, the property of the estate additionally includes

(1) all property of the kind specified in [§ 541] that the debtor acquires *after* the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor *after* the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

§ 1306(a)(1), (2) (emphasis added). Thus, generally stated, the property of a Chapter 13 bankruptcy estate includes property acquired post-petition.

While § 541 and § 1306(a) appear to operate in a simple way—both pre-petition and post-petition property are property of the estate—another provision of Chapter 13 suggests that the plan's confirmation may trigger a change in the estate property:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear

---

**2.** *See also* DOUGLAS G. BAIRD, THE ELEMENTS OF BANKRUPTCY 54–55 (rev. ed. 1993) ("Chapter 7 forces individuals to give up existing assets, but allows them to keep future earnings. Chapter 13

reverse this. In a Chapter 13 case, the debtor keeps all assets except a portion of future wages.").

of any claim or interest of any creditor provided for by the plan.

§ 1327(b), (c). Several courts have struggled to interpret the combined effect of §§ 541, 1306(a), and 1327(b).[3] Specifically, we must determine what is the effect of "vest[ing]" property of the estate in the debtor after confirmation, § 1327(b), while at the same time deeming property acquired post-petition to be property of the estate, § 1306(a). Although each section may have a plain meaning when read alone, reading § 1327(b) together with § 1306(a) has yielded different opinions. As the bankruptcy court explained, *Fisher,* 198 B.R. at 724–25, the various decisions split into one of three general categories: (1) upon confirmation, property of the estate becomes the debtor's property and the estate terminates, *e.g., Shell Oil Co. v. Capital Fin. Servs.,* 170 B.R. 903, 905–06 (S.D.Tex.1994); (2) upon confirmation, estate property transfers to the debtor, but the estate survives and includes some property acquired post-confirmation, *e.g., In re Leavell,* 190 B.R. 536, 540 (Bankr.E.D.Va.1995)[4]; and (3) no property is removed from the estate, *e.g., In re Aneiro,* 72 B.R. 424, 429–30 (Bankr.S.D.Cal.1987).[5]

The first interpretation of the pertinent statute resolves the question by giving full effect to § 1327(b): confirmation transfers the property of the estate to the debtor, and no more estate property exists after that time. *E.g., Shell Oil,* 170 B.R. at 905–06. However, this reading ignores the directive of § 1306(a) that post-petition acquisitions of property by the debtor are deemed property of the estate until the case's closing, dismissal, or conversion—*not* merely until confirmation. *E.g., Fisher,* 198 B.R. at 726–27. Moreover, other sections applicable to Chapter 13 assume the existence of the estate after confirmation. *E.g., Security Bank of*

*Marshalltown v. Neiman,* 1 F.3d 687, 690–91 (8th Cir.1993) (citing §§ 349(b)(3) and 704(9)).

The third interpretation—the estate and its property remain the same after confirmation—accords § 1306(a) its plain meaning: property acquired post-petition is property of the estate until closing, dismissal, or conversion. This reading, however, arguably renders nugatory § 1327(b), which mandates that the plan's confirmation "vests" the property of the estate in the debtor. According to legal and general dictionaries, to "vest" means to "give an immediate, fixed right of present or future enjoyment." BLACK'S LAW DICTIONARY 1563 (6th ed. 1990); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2547 (1976). Another section of Chapter 13 already generally provides for the debtor to remain in "possession" of the property of the estate during the proceeding, § 1306(b), and thus § 1327(b) should be read to confer to the debtor property rights beyond possession if the vesting provision is to have any effect. *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–33, 109 L.Ed.2d 588 (1990) (expressing reluctance to interpret statute so as to render another provision superfluous); 5 WILLIAM L. NORTON, JR., BANKRUPTCY LAW AND PRACTICE (2D) § 122:12 (1993).

We acknowledge that a preference for avoiding a redundant reading of the vesting provision of § 1327(b) should not necessarily control our interpretation of the statutory scheme; legislative provisions may be unintentionally or intentionally repetitive. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *cf.* Michaela M. White, *The Effects of Chapter 13 Plan Confirmation and Case Conversion on Property,* 26 CREIGHTON L.REV. 785, 804 (1993) (vesting provision

---

**3.** We note that § 1327(b) authorizes the plan to clarify the nature of the property of the estate after confirmation, and thus careful planning could avoid the wasteful litigation arising from a plan that fails to address the issue. *See* KEITH M. LUNDIN, 2 CHAPTER 13 BANKRUPTCY § 6.27 (2d ed. 1994). In the instant case, paragraph 9 of the plan says unhelpfully that the "[p]roperty of the Debtor shall revest in the debtor upon confirmation of these proceedings." Fisher Plan ¶ 9 (dated June 20, 1994) (94 B 12537) (Docket Entry 1).

**4.** In *Security Bank of Marshalltown v. Neiman,* 1 F.3d 687, 691 (8th Cir.1993), the Eighth Circuit held that the estate survives confirmation, but expressly refrained from deciding what property remained in the estate, *id.* at 690.

**5.** For additional cases, see KEITH M. LUNDIN, 2 CHAPTER 13 BANKRUPTCY § 6.16 (2d ed. 1994 & Supp.1996).

"simply clarifies" that debtor retains title and possession of estate property). Other provisions of Chapter 13, however, refer to vesting in ways suggesting that the term means more in § 1327(b) than a mere restatement of § 1306(b)'s grant of the debtor's right to possession. Specifically, § 1327(c) provides that, unless the plan provides otherwise, "the property *vesting* in the debtor under subsection (b) of this section is *free and clear* of any claim or interest of any creditor provided for by the plan." (emphases added). The important effect of a plan's confirmation accomplished by § 1327(c)—freeing property from certain creditors who are provided for by the plan, *cf. In re Penrod*, 50 F.3d 459, 462–63 (7th Cir.1995) (analogous provision in Chapter 11 may affect liens of creditors)—implies that the "vesting" of property means more than a simple reiteration of the right to possession. Furthermore, § 1322(b)(9) authorizes a Chapter 13 plan to "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." Defining "vesting" as the grant of the right to possession renders redundant § 1322(b)(9) because § 1306(b) already provides that a plan may transfer the right to possession away from the debtor. *Compare* § 1322(b)(9) *with* § 1306(b) ("Except as provided in a confirmed plan . . ., the debtor shall remain in possession. . . ."). Finally, our reading is consistent with the use of the term "vests" in provisions outside of Chapter 13 but elsewhere in the Bankruptcy Code. *See In re Petruccelli*, 113 B.R. 5, 11, 16 (Bankr. S.D.Cal.1990) (explaining meaning of analogous vesting provision in § 1227(b) of Chapter 12); *cf.* § 362(b)(9)(D) (conditioning exception to automatic stay of tax assessments by referring to property that is "transferred out of the estate to, or otherwise revested in, the debtor"); § 349(b)(3) (dismissal of case "revests" the estate property in the entity in which the property was vested prior to start of case).

■ In light of these reasons, the term "vests" in § 1327(b) does effect a change in the estate and its property. Rather than interpret sections 1306(a) and 1327(b) so that one or the other carries no meaning, we take an approach similar to the second line of cases: upon confirmation, the property of the estate "vests" or transfers to the debtor, § 1327(b), but the estate survives and there does exist property of the estate after confirmation, § 1306(a). Although the decisions in this category agree on that general result, the opinions split over what property specifically is in the estate after confirmation. *Compare In re Adams*, 12 B.R. 540, 542 (Bankr.D.Utah 1981) ("Any property which has not been designated in the plan or order of confirmation as necessary for the execution of the plan revests in the debtor. . . .") *with In re Ziegler*, 136 B.R. 497, 500 (Bankr. N.D.Ill.1992) ("only that portion of post-confirmation income from services needed to fund the plan becomes property of the estate"). One line of cases, for example, reasons that post-confirmation earnings necessary to funding the plan—the usual source of plan funding, § 1322(a)(1)—should remain protected by the automatic stay. *E.g., Ziegler*, 136 B.R. at 502.

■ While protecting such funds may be salutary policy, the Bankruptcy Code does not, in defining what property is in the estate, distinguish between earnings and other property. Although the pertinent statutes are not crystal clear, we are still constrained by their text, which suggests to us the following interpretation: First, § 1306(a) defines "property of the estate" to include property and earnings acquired by the debtor after the case's commencement. While the case is pending, the post-petition property and earnings are added to the estate until confirmation, the event that triggers § 1327(b) and "vests" the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this "vesting" is free and clear of the claims or interests of creditors provided for by the plan, § 1327(b), (c). Finally, the property of the estate once again accumulates property by operation of § 1306(a) until the case is "closed, dismissed, or converted."

We believe that this reading of the statutory scheme is consistent with the language of sections 1306(a) and 1327(b), and avoids creating a distinction among types of post-confirmation estate property where there exists

no textual basis to do so. Furthermore, our interpretation is also consistent with the understanding of the post-confirmation estate reflected in the reasoning of *In re Lybrook,* 951 F.2d 136 (7th Cir.1991). In *Lybrook,* the Chapter 13 debtors inherited valuable land after filing their petition but before plan confirmation. In fact, the debtors and their creditors never did agree on a plan, so the debtors exercised their right under § 1307(a) to convert the bankruptcy into a Chapter 7 proceeding. After conversion, the Chapter 7 trustee argued that the inherited land was part of the Chapter 7 estate, even though the land would not have been part of the estate had the case begun as a Chapter 7 case. *Id.* at 136–37.

The Seventh Circuit agreed, pointing out first that § 1306(a) deems as part of the Chapter 13 estate property acquired after the case's start but before conversion. *Id.* at 137. No other provision, however, expressly addressed the scope of the post-conversion estate, so the court in *Lybrook* instead reasoned that the Chapter 7 estate should include post-filing property in order to discourage "opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors":

> A debtor who lacks confidence that he can actually work his way out of his financial hold by payments under a Chapter 13 plan will nevertheless have an *incentive to proceed under that chapter for as long as he can,* holding his creditors at bay and thus staving off the evil day when they seize his assets. For he knows that if his position deteriorates further it is the creditors who will bear the loss, while if he should get lucky and win a lottery or a legal judgment, or inherit money . . ., he will be able to keep his windfall by the simple expedient of converting to Chapter 7—and remember that the debtor can convert to that chapter from Chapter 13 at will.

*Id.* at 137–38 (emphasis added). Thus, although the facts in *Lybrook* itself did not include confirmation of a Chapter 13 plan, the court's reasoning suggests that, after a Chapter 13 plan's confirmation, property covered by § 1306(a) should be included in the property of the estate in order to discourage

dubious Chapter 13 filings that are pre-destined for Chapter 7. Our view of the post-confirmation estate retains this disincentive: if the debtor stumbles upon his windfall before confirmation, then it is in the property of the estate and the plan will reflect the windfall's value, § 1326(a)(4), (5); if the windfall arrives after confirmation, it is considered estate property, § 1306(a), and conversion to Chapter 7, according to *Lybrook,* would not remove the property from the Chapter 7 estate.

In addition, our reading of the pertinent statutes is also consistent with the amendments contained in the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 (eff. Oct. 22, 1994), although the amendments do not apply to Fisher's case, which was filed before the Act's effective date. In relevant part, the Act added new subsection 11 U.S.C. § 348(f), which addresses the scope of the estate after conversion from Chapter 13 to 7—the issue decided in *Lybrook.*

> (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; . . .
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

§ 348(f). Although § 348(f)(1)(A) generally rejects the result of *Lybrook*—the post-conversion estate contains the estate property as of the date of the petition's *filing* rather than conversion—the new subsection operates in a way that implies the existence of estate property after confirmation. By defining the post-*conversion* estate as property of the estate in the debtor's possession or under the debtor's control "on the date of conversion," and because conversion may occur after confirmation or "at any time," § 1307(a), then the post-*confirmation* estate cannot general-

ly be devoid of property. Moreover, § 348(f)(2) makes the same implication; indicating some agreement with *Lybrook*'s reasoning, that subsection protects against bad faith conversions by deeming the post-conversion estate to include "property of the estate as of the date of conversion."

To summarize, § 541 generally sweeps the debtor's property into the estate upon the filing of a Chapter 13 petition. Prior to the plan's confirmation, § 1306(a) deems post-filing property as property of the estate. At the time of confirmation, § 1327(b) vests, or transfers, the property of the estate at that time in the debtor. After confirmation, § 1306(a) once again operates to deem property acquired by the debtor after confirmation as property of the estate. We believe that this interpretation reconciles the text of the governing statutes without contradicting the language of any provision and without fatally undermining any important policy considerations.

### III.

Applying our interpretation in the instant case, we hold that the City did not violate § 362(a)(3) of the automatic stay. Section 362(a)(3) prohibits only actions to obtain possession of, or exercise control over, "property of the estate." Fisher's car was property of the estate at the time of the plan's confirmation, but under § 1327(b) vested in her when the plan was confirmed; the plan did not provide otherwise. Thus, at the time the City took the actions at issue here, the car was no longer property of the

estate protected by § 362(a)(3).[6] Accordingly, we reverse the decision of the bankruptcy court. It is so ordered.

---

6. Based on our holding, we need not conclusively address the City's alternative argument, which relies on an exception to the automatic stay. Section 362(b)(5) authorizes a government to enforce "a judgment, other than a money judgment, obtained in an action or proceeding" brought to enforce the government's "police or regulatory power," notwithstanding § 362(a)(2)'s stay of enforcement of judgments. The City argues that if Fisher's car remained property of the estate, and thus protected by § 362(a)(3), then the City could not even tow the car in an emergency situation, even though § 362(b)(5) appears to authorize a government to enforce injunctive relief. Although it is plausible to interpret § 362(a)(3) so that such police powers are not stayed, cf. *Board of Governors of Federal Reserve Sys. v. MCorp Fin.*, 502 U.S. 32, 41, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991) (refusing to

read § 362(a)(3) so broadly that it swallows exception of § 362(b)(4)); *Cournoyer v. Town of Lincoln*, 790 F.2d 971, 975–76 (1st Cir.1986), we need only point out that § 362(b)(5) does not authorize enforcement of a "money judgment," which was what the City did by selling Fisher's car due to her failure to pay the parking tickets.

In addition, Fisher does not argue and we do not address whether alternative grounds exist for finding a violation of the automatic stay, or whether the City was bound by the plan's confirmation in pursuing its remedies as a creditor, *see In re Chappell*, 984 F.2d 775, 782 (7th Cir.1993), and the City raises no issue regarding sovereign immunity, *see* § 106(b) (filing of proof of claim constitutes waiver of sovereign immunity), even though the City did not appear to have filed a claim for the post-petition tickets, *Fisher*, 198 B.R. at 723.