In re Brenda Diane KRICK, Debtor.

Stacia L. Yoon, Trustee, Plaintiff,

v.

Brenda Diane Krick, James Olson and Derlene Olson, Defendants.

Bankruptcy No. 05–64279 JPK.
Adversary No. 06–6070.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Sept. 12, 2007.

Stacia L. Yoon, Esq., Kopko, Genetos & Retson, LLP, Merrillville, IN, attorney for the Plaintiff.

George Livarchik, Esq., Livarchik & Farahmand, Chesterton, IN, attorney for the Defendants.

## MEMORANDUM OF DECISION

**J. PHILIP KLINGEBERGER,** Bankruptcy Judge.

In this adversary proceeding, the plaintiff Stacia L. Yoon, Trustee of the Chapter 7 bankruptcy estate of Brenda Diane Krick ("Trustee"), seeks a determination pursuant to 11 U.S.C. § 363(h) that she may sell the debtor's interest in real property in order to obtain proceeds of that sale for the benefit of the Chapter 7 estate. The defendants—the debtor Brenda Diane Krick ("Brenda") and her parents James Olson ("James") and Derlene Olson ("Derlene")—oppose the Trustee's requested relief.

This is a case with a potentially large number of fascinating legal issues, some of which have not been the subject of much in the way of reported case law. As will be seen, the determination of this adversary proceeding is premised upon principles which were not readily apparent to the Court until thorough examination of the record was made in order to prepare this decision. As a result, a number of the issues addressed by the parties in their legal memoranda are not material to this determination.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a)/(b) and N.D.Ind.L.R. 200.1 of the Rules of the United States District Court of the Northern District of Indiana. This proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(N) and (O). This memorandum of decision constitutes the findings of fact and conclusions of law with respect to final determination of this adversary proceeding, in accordance with Fed. R.Bankr.P. 7052/Fed.R.Civ.P. 52(a).

## I. COURSE OF THE PROCEEDING

This adversary proceeding was initiated by a complaint filed on March 7, 2006. The defendants filed their answer on March 24, 2006. Trial to the bench was held on March 1, 2007. The record necessary for the Court's determination is that made at the trial.

## II. *ISSUES*

The overriding issue is whether, based on Brenda's interest in a parcel of real estate located at 259 East 1225 North, Chesterton, Indiana, the Trustee may utilize 11 U.S.C. § 363(h) to sell both Brenda's interest and the interests of James and Derlene in that real property. Embedded in this issue is the critical primary issue to be addressed by this decision: whether Brenda's Chapter 7 estate has an interest in the subject real estate to which 11 U.S.C. § 363(h) may apply.

Throughout the course of proceedings in this case, the Court and the parties have focused upon the factual circumstances which relate to Brenda's original acquisition of a title interest in the subject real estate, and upon subsequent transactions which first involved transfer of that title interest by Brenda to James and Derlene by means of a quit claim deed, and second concerned a determination by the trial court in Brenda's dissolution of marriage action which adjudged that the subject real estate did not constitute marital property in that divorce and was in fact the property of James and Derlene. The legal principles which the parties have addressed as a result of this factual focus are interesting and complicated, to say the least. However, having now thoroughly reviewed the entire record, the Court has concluded that the outcome of this proceeding is controlled by proceedings in the Chapter 13 case of William Charles Krick and Brenda Diane Krick (case number 02–62419), and the application of 11 U.S.C. § 1327(a), 11 U.S.C. § 1327(b) and 11 U.S.C. § 348(f)(1)(A) in relation to those proceedings. As a result, a significant portion of the evidence submitted at the March 1,

2007 trial has little, if any, materiality in relation to the legal principles which control this case.

The determinative issue in the Court's view is the following:

> Did confirmation of the debtors' Chapter 13 plan in Case Number 02–62419 result in re-vesting of any interest which Brenda may have held in the subject real estate in the debtor, pursuant to 11 U.S.C. § 1327(b), in a manner which— coupled with subsequent transactions in relation to that property—caused the property to be excluded as property of Brenda's Chapter 7 bankruptcy estate pursuant to 11 U.S.C. § 348(f)(1)(A)?

For those readers of this decision who do not want to flip to the end for the answer to the foregoing question, the answer is "yes". The Chapter 7 estate of Brenda Diane Krick did not include whatever interest she may have had in the subject real estate, and thus there is no interest in that Chapter 7 bankruptcy estate upon which an action pursuant to 11 U.S.C. § 363(h) may be based.

## III. *FINDINGS REGARDING MATERIAL FACTS*

On October 24, 2000, a quit claim deed by which James S. Olson and Derlene Olson conveyed the subject real estate to "James S. Olson & Derlene Olson, husband and wife, and Brenda D. Krick, married, in joint tenancy, and not in tenancy in common", was recorded in the office of the Porter County, Indiana Recorder. This deed on its face states that it was executed by James and Derlene on October 24, 2000, a date further confirmed by the acknowledgment which appears in the instrument.[1]

---

1. A significant amount of testimony was provided at the trial by Brenda and by James as to the circumstances which gave rise to this conveyance. Those circumstances are not

material to the determination made by this decision, but may be briefly summarized as follows. Brenda and her husband William were residing as renters in the subject real

On May 21, 2002, William Charles Krick and Brenda Diane Krick, as co-debtors, initiated a Chapter 13 case in the United States Bankruptcy Court for the Northern District of Indiana as Case Number 02–62419. In Schedule A of the schedules filed in this case on May 21, 2002, the parcel of real estate at issue in this case was designated as follows: "Residence— 259 East 1225 North, Chesterton, Indiana 46304". The nature of the debtor's interest in the property was designated as "Co–Tenant", and by the designation "W", the co-tenancy interest was designated as that of Brenda. The market value of the property was stated to be $93,000.00, subject to a secured claim of $50,000.00. Schedule D of the schedules filed at the inception of the case listed Fifth Third Bank as a secured creditor by virtue of a mortgage on the subject property, and the secured debt stated to be in the amount of $50,000.00 was designated as fully secured.

A Chapter 13 plan was also filed on May 21, 2002 in Case Number 02–62419. This plan was never modified prior to its initial confirmation, and an order confirming the plan was entered on December 3, 2002. The critical provisions of the plan are the following:

1. Section 2 of the plan states that "(h)olders of allowed secured claims, including secured tax claims, shall retain the lien securing such claims and shall be paid as follows". Fifth Third Bank is designated as a first mortgagee in this section of the plan, having an open-ended value with respect to the collateral securing its claim.

2. The plan provides for a monthly payment to Fifth Third Bank of $352.80 (essentially the amount of the monthly payment on the home equity loan).

3. Paragraph 4 of the plan provides that the debtors will directly pay "rent on home to James and Derlene Johnson of $550.00 per month".

4. Finally, the plan states the following:

   *Other Special Plan Provisions:* Title to the debtors' property shall re-vest in the Debtors on confirmation of Plan pursuant to 11 U.S.C. § 1327(b).

The order confirming the debtors' plan was entered on December 3, 2002. The order did not modify the foregoing provision as to "re-vesting" in the debtors pursuant to 11 U.S.C. § 1327(b). The

estate, which was owned by Brenda's parents. In order to finance the construction of a large utility building (essentially a large free-standing garage) on the property for the storage of William's vehicles, Brenda obtained a loan from Fifth Third Bank. Various documents have been submitted into evidence in relation to this loan, and it is somewhat unclear whether both James and Derlene Olson were co-obligors with respect to this transaction, but that is immaterial to this decision. The testimony of both James and Brenda was uncontroverted, and was consistent, with respect to the underlying reason and intent for the conveyance by the James and Derlene of a part-interest in the real estate to Brenda. In order to obtain the loan, Fifth Third Bank required Brenda to have a legal interest in the

title to the property, given that she was the principal obligor of the loan. [This actually makes some sense, based upon Brenda's trial testimony. Brenda testified that the loan was a "home equity" loan, and thus it is certainly not unforeseeable that to qualify for the loan as the principal obligor, Brenda was required to have a legal interest in the "home" which would provide collateral for the loan.]. Both Brenda and James testified that the conveyance was made solely so that Brenda could qualify for this loan, and that it was not their intent that Brenda actually acquire a legal interest in the property. The Court makes no determination as to the intent of this transaction, however, as any determination is irrelevant to the legal analysis upon which the Court's decision is based.

pertinent provisions of the order are the following:

a. Paragraph 5, which states:

With respect to each allowed secured claim provided for by the Plan:

A. That the holder of such claim has accepted the Plan;

B. The Plan provides that the holder of such claim retain the lien securing such claim; and

C. The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each claim is not less than the allowed amount of such claim to such holder; or

D. The Debtors surrender the property securing such claim to such holder.

. . .

b. Paragraph 7, which states:

That the Debtor(s) shall not mortgage, sell or otherwise dispose, transfer or encumber any personal or real property without first obtaining written authorization from the Court after notice and hearing.

We next come to transactions involving Brenda's interests in the subject real estate subsequent to confirmation of the Chapter 13 plan in Case Number 02–62419. On April 21, 2004, a quit claim deed was recorded in the Office of the Porter County, Indiana, Recorder by which "James S. Olson & Derlene Olson, husband wife, and Brenda D. Krick, married, in joint tenancy, and not in tenancy in common" conveyed the subject real estate to "James S. Olson and Derlene Olson, husband and wife". The acknowledgment included in this instrument establishes that Brenda, James and Derlene executed it on April 14, 2004.

On May 20, 2005, a Dissolution Decree was entered in Cause Number 64D02–0406–DR–4830 in the Porter County, Indiana, Superior Court in the case entitled "In re the Marriage of Brenda Krick and William Krick". The testimony of James at the trial establishes that the issue of Brenda's interests in the subject real estate was litigated before the Court in this action, and that William Krick sought by means of that litigation to establish that Brenda had an interest in the subject real estate which should be included in consideration of the distribution of marital property. This testimony was uncontroverted, and the Court thus finds that the Porter Superior Court did determine, in a trial on the merits, the interests of Brenda Krick in the subject real estate in relation to this action for dissolution of marriage. Paragraph 7 of the decree states:

7. That the Court finds that the house is not a marital asset and, likewise, the mortgage is not a marital debt. While there was talk of the parties entering into a land contract with the Petitioner's parents at some time, that was never done. The house remains the property of the Petitioner's parents.

On July 1, 2005, a "Motion to Delete/Sever Joint Bankruptcy" was filed in Case Number 02–62419. This motion states in its entirety the following:

Comes now Co–Debtor, Brenda Diane Krick and requests leave to delete/sever herself from this case in order to proceed on her own bankruptcy case which she intends to amend.

This motion was granted by an order entered on August 3, 2005, which ordered that the joint case of William Charles Krick and Brenda Diane Krick "is hereby severed or deconsolidated into two separate cases". This order further provided that the "date of the Petition on the new

and severed case of the Debtor shall be shown by the Clerk on the docket sheet for the new case as the date the original joint petition was filed by the Debtor under the above-captioned case number". Finally, the order provided that Brenda Diane Krick would be a debtor under Chapter 13 in a "new and severed case", given Case Number 05–64279, and that the case of William Charles Krick would continue to pend as a case under Chapter 13 under Case Number 02–62419.

On July 22, 2005, a document entitled "Debtor's Motion to Convert to Case Under Chapter 7" was filed in Case Number 02–62419. This motion requested conversion of the Chapter 13 case of Brenda Diane Krick to a case under Chapter 7.[2] On August 10, 2005, an order of conversion of Brenda's Chapter 13 case to Chapter 7 was entered in Case Number 05–62479. Thus, Brenda's Chapter 13 case was converted to a case under Chapter 7 on that date.

While amended schedules were filed with respect to Brenda on July 22, 2005 in Case Number 02–62419, the substance of those amended schedules is not pertinent to this decision.

### IV. *LEGAL ANALYSIS*

■ As noted above, much of the record in this case is focused upon issues which the Court has determined are not material to the legal principles which are to be applied to determine this adversary proceeding. This is not at all chastisement of counsel for the parties. The Court, as the quarterback of the case, is primarily responsible for this misdirection play, and the Court's focus was on the issues addressed by the parties at the trial and in their legal memoranda submitted subsequent to the trial. However, the goal in any case decided by this Court is to obtain the correct legal result, regardless of issues designated by the parties and issues addressed to the Court; *See*, Fed. R.Bank.P. 7054(a)/Fed.R.Civ.P. 54(c). As a result, the Court will not address most of the substantive legal analysis made by the parties in their respective arguments to the Court.

As noted above, the complaint filed by the Trustee in this case is expressly premised solely upon 11 U.S.C. § 363(h).[3]

In order to succeed under 11 U.S.C. § 363(h), the Trustee must establish that the Chapter 7 bankruptcy estate of Brenda Diane Krick has an interest in the subject real estate. For the reasons stated below, the Trustee has failed to establish that interest.

The most critical issue in this case—not developed by the parties in their submissions to the Court, again because the Court did not direct them to that goal—is the manner in which 11 U.S.C. § 1327(b) and 11 U.S.C. § 348(f)(1)(A) affect the relief requested by the Trustee. 11 U.S.C. § 1327(b) provides:

**(b)** Except as otherwise provided in the plan or the order confirming the plan,

---

**2.** It may seem odd, but this motion was correctly filed in Case Number 02–62419, in that as of the date of its filing, the order severing the separate cases of William Charles Krick and Brenda Diane Krick had not yet been entered.

**3.** Rhetorical paragraph 11 of the complaint references § 363(g),(h) and (i).11 U.S.C.

§ 363(g) deals exclusively with "any vested or contingent right in the nature of dower or curtesy" concepts which have no applicability to the instant case. 11 U.S.C. § 363(i) provides a remedy for co-owners, which exists as a matter of law, and which is not a substantive concern in this case.

the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 348(f)(1)(A) states:

(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;

The analysis begins with the determination of "property of the estate" in Case Number 02–62419 with respect to Brenda's interest in the subject real estate. This is because 11 U.S.C. § 348(f)(1) provides that "property of the estate in the converted case [Brenda's Chapter 7 case] shall consist of property of the estate, *as of the date of filing of the petition* ..." (emphasis supplied). Mirroring 11 U.S.C. § 348(a), the August 10, 2005 conversion order designated the petition date as the date of the filing of the petition which initiated Case Number 02–62419. Schedule A filed in Case Number 02–62419 stated that Brenda had an interest as a co-tenant in the subject real estate. Schedule D stated that Fifth Third Bank was a secured creditor with respect to the subject real estate. The plan confirmed in Case Number 02–62419 treated Fifth Third Bank as having an allowed secured claim.

Thus, the schedules established Brenda's legal[4] interest in the subject real estate as property of her bankruptcy estate in Case Number 02–62419. Moreover, the designation of Fifth Third Bank as a secured creditor in Schedule D, and the provision in the plan for Fifth Third Bank as a secured creditor, could only have been legally justifiable if Brenda had a legal interest in the property which constituted property of her Chapter 13 bankruptcy estate As provided by 11 U.S.C. § 506(a)(1):

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest *in the estate's interest in such property,* ... (emphasis supplied)

The treatment of the claim of Fifth Third Bank as a secured claim necessarily established that creditor as having an interest in the property of Brenda's Chapter 13 estate, which consequently meant that Brenda had a legal fee simple co-tenancy interest in the subject property which was property of her Chapter 13 estate.

11 U.S.C. § 1327(a) states:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

As stated in § 1327(a), the plan confirmed in Case Number 02–62419 bound Brenda to the terms of that plan. The terms of the plan established that Brenda had a legal fee simple co-tenancy interest in the subject real estate which was property of the estate on the date of the filing of the petition in Case Number 02–62419; *See, In re Wilson,* 2006 WL 2348539 (Bankr. D.Dist.Col.2006); *See, In re Hearn,* 337 B.R. 603, 609–612 (Bankr.E.D.Mich.2006). A great deal of time has been spent in this case on the issue of the "intent" of James and Derlene in conveying an interest in the subject real estate to Brenda prior to

---

**4.** Throughout this opinion, the term " 'legal' interest" connotes and means a vested fee simple ownership interest in the subject property, as contrasted to a lesser equitable, derivative or residuary interest under principles of interests in property.

the filing of Case Number 02–62419. Issues concerning the intent of the original conveyance are immaterial. By operation of 11 U.S.C. § 1327(a), Brenda is bound to the terms of her confirmed plan, which treated her interests in the subject property as a legal co-tenancy interest of her bankruptcy estate. Thus, for the purposes of 11 U.S.C. § 348(f)(1)(A), Brenda's interests in the subject real estate constituted a legal co-tenancy interest, which interest was property of her estate as of the date of the filing of the petition in Case Number 02–62419.

The analysis continues with matters relating to the confirmed Chapter 13 plan in Case Number 02–62419. The confirmed plan, filed on May 21, 2002, expressly provides the following:

> *Other Special Plan Provisions:* Title to the Debtors' property shall re-vest in the Debtors on confirmation of Plan pursuant to 11 U.S.C. § 1327(b).

The order by which the plan was confirmed, entered on December 3, 2002, did not override this re-vesting provision. Paragraph 7 of that order did state the following: "That the Debtor(s) shall not mortgage, sell or otherwise dispose, transfer or encumber any personal or real property without first obtaining written authorization from the Court after notice and hearing."

■ There is a great deal of disagreement in reported decisions of United States Bankruptcy Courts, of United States Districts Courts acting as courts of appeal with respect to Bankruptcy Court decisions, and of United States Courts of Appeals, as to the precise meaning to be given to 11 U.S.C. § 1327(b). An *outstanding* analysis of the various lines of authority may be found in *Chapter 13 Bankruptcy*, 3rd Edition, London (2006), Vol. 3, Section 230.1. An *outstanding* synopsis of the various lines of authority on

this issue can also be found in *In re Fisher*, 198 B.R. 721 (Bkrtcy.N.D.Ill.1996), *rev. by* 203 B.R. 958 (N.D.Ill.1997). The essentially four divergent views are:

1. At confirmation, the estate ceases to exist and all property acquired before or after confirmation becomes property of the debtor. [London, Vol. 3, Section 230.1, p. 230–4].

2. At confirmation, all property of the estate becomes property of the debtor, except property essential to the debtor's performance of the plan; the Chapter 13 estate continues to exist, but it contains only property necessary to performance of the plan, whether acquired before or after confirmation. [London, Vol. 3, Section 230.1, p. 230–5].

3. At confirmation, all property of the estate becomes property of the debtor; the Chapter 13 estate continues to exist and "refills" with property defined in § 1306 that is acquired by the debtor after confirmation, without regard to whether that property is necessary to performance of the plan. [London, Vol. 3, Section 230.1, p. 230–10].

4. The vesting of property in the debtor under § 1327(b) does not remove any property from the Chapter 13 estate, whether acquired before or after confirmation; the debtor's rights and responsibilities with respect to property of the estate may change somewhat at confirmation, but the existence and composition of the estate are not disturbed by § 1327(b). [London, Vol. 3, Section 230.1, p. 230–14].

Suffice it to say that with respect to § 541 property on the date of the filing of the Chapter 13 case, the Court agrees with the line of authorities designated in subparagraph 1 above, i.e., absent a plan provision or a provision in the order of confirmation which provides otherwise, upon confirmation of a Chapter 13 plan "the estate ceas-

es to exist and all property of the estate whether acquired before or after confirmation becomes property of the debtor." Interestingly, this result also adheres with respect to § 541 property on the date of the filing of the Chapter 13 case in the line of authority designated in subparagraph 3 above. Simply said, in order to give meaning to the phrase "vests all of the property of the estate in the debtor" in section 1327(b), the words "estate" and "debtor" must define separate concepts. 11 U.S.C. § 1306(b) provides that unless otherwise provided by the plan or the confirmation order, the debtor remains in possession of property of the estate. Thus, the "revesting" described by § 1327(b) obviously connotes something more than a change in possessory rights vis-a-vis the debtor. In other areas of law, the concepts of "vesting" and of possession are distinct. While admittedly stated in an entirely different context, it has been stated that "(o)ur courts always have recognized the marked distinction between the vesting of an estate and the right to enjoy possession of the estate"; *In re Estate of Knight,* 178 Ill.App.3d 777, 127 Ill.Dec. 867, 533 N.E.2d 949, 951 (1989), as cited in *In re Chenoweth,* 3 F.3d 1111, 1113 (7th Cir.1993). As stated in *In re O'Brien,* 181 B.R. 71, 74 (Bkrtcy.D.Ariz.1995):

[A]t the time of confirmation 11 U.S.C. § 1327(b) 'vests' all of the property of the estate in the debtor (footnote omitted). *Black's Law Dictionary* states that the term 'vests' means 'To give an immediate, fixed right of present or future enjoyment. [*Black's Law Dictionary,* p. 809 (5th ed.1983)].' Since Section 1306(b) already provides the debtor with possession of bankruptcy estate property, the term 'vests' in this context must mean that the bankruptcy estate generally ceases to exist, and the debtor

has the sole ownership, control, and enjoyment of the property.

As stated by Judge London:

It is reasonable to conclude that the vesting of 'all of the property of the estate in the debtor' under § 1327(b) means exactly what it says—except as otherwise provided in the plan or the order of confirmation, property of the Chapter 13 estate moves out of the estate and into the possession and control of the debtor upon confirmation of the plan. [London, Vol. 3, Section 230.1, p. 230–1].

Most of the reported decisions on the issue of the consequences of revesting arise in a circumstance in which a post-petition creditor sought to pursue collection against a Chapter 13 debtor, to which the debtor then responded by asserting the protection of 11 U.S.C. § 362(a)(3) and/or (4), which stay actions affecting property of the estate. Many of these decisions relate to the creditor's garnishment of the debtor's income, and thus deal with the post-petition income stream of the debtor under 11 U.S.C. § 1306(b) rather than with the property in which the debtor had an interest at the inception of the case. Fewer cases address "vesting" in the context of § 541 pre-petition property which became property of the estate by operation of 11 U.S.C. § 1306.

A case which addresses the ability of a post-petition creditor to reach pre-petition estate property is *In re Fisher, supra.* The facts are fun, in a morbid bankruptcy sort of way. The debtor accumulated 10 parking tickets from the City of Chicago subsequent to the filing of her Chapter 13 case, to go with a number of violations she had accumulated pre-petition. In a totally valid exercise of its powers under city ordinances, the City of Chicago booted, towed and disposed of (by crushing it) the debtor's car, subsequent to confirmation of

her plan. Neither the plan nor the confirmation order contained any provision concerning revesting under 11 U.S.C. § 1327(b), and thus that statute was fully operative, as to whatever it decrees. The City didn't seek relief from the stay before exercising its authority. The debtor, understandably upset about the treatment of her vehicle, filed an action pursuant to 11 U.S.C. § 362(h) for violation of the stay. In an extremely provocatively well—reasoned decision, Judge Eugene Wedoff discussed 3 of the 4 "revesting" lines of authority designated by Judge London (subparagraphs 1, 2 and 4 above). Acknowledging that the "estate termination" position (subparagraph 1 above) "has a strong basis" [198 B.R. 721, 725], Judge Wedoff nevertheless in essence adopted the "estate preservation" approach (subparagraph 4 above) as most consistent with the structuring and implementation of Chapter 13 statutes. As much as Judge Wedoff's analytical prowess is sincerely admired by this author, it pains this author to state that he agrees with the analysis and result reached in *In re Fisher*, 203 B.R. 958 (N.D.Ill.1997) [which reversed Judge Wedoff's decision] *with respect to pre-petition § 541 property:* As stated by the District Court: "The term 'vests' in § 1327(b) does effect a change in the estate and its property"; 203 B.R. 958, 962. Resultantly, "(a)t the time of confirmation, § 1327(b) vests, or transfers, the property of the estate at that time to the debtor": 203 B.R. 958, 964.[5]

The only case in the Seventh Circuit which deals in any manner with 11 U.S.C.

§ 1327(b) is *The Matter of Heath,* 115 F.3d 521 (7th Cir.1997). Judge London discusses *Heath* in his treatise in extensive detail in section 230.1, and describes *Heath* as placing the Seventh Circuit in the "estate transformation" approach designated on page 230–5 of Judge London's treatise (subparagraph 2 above); page 230–15, footnote 24 of the treatise. This characterization may be correct as far as it goes, but *Heath* is not a pure 1327(b) case, and Heath does not address the effect of § 1327(b) on pre-petition § 541 property. It must be borne in mind that in *Heath,* the order by which the debtor's plan was confirmed expressly stated that "the debtor's income and other assets including accounts receivables [sic] remain estate property to the extent necessary to fulfill the plan"; *Heath,* 115 F.3d 521, 522–523. This provision removed the described property from the automatic revesting provided for by § 1327(b). The general issue in *Heath* was whether a $50 charge by the United States Postal Service for processing a wage withholding order entered in order to fund the debtor's plan constituted a violation of the automatic stay in its perceived effect upon property of the Chapter 13 estate. The Chapter 13 Trustee thought so, and filed an adversary proceeding to recover the $50 charge. The specific issue in *Heath* was whether the *post-petition* income of the debtor preserved as property of the estate by the confirmation order was encroached upon by the $50. fee. It seems to this author, based upon the facts of the case, that in *Heath* the Seventh Circuit adopted the view that even post-petition property de-

---

**5.** The District Court in *Fisher* essentially adopted the "refilling" approach described above in subparagraph 3 above with respect to property acquired by the debtor subsequent to confirmation of the plan—really as *dicta,* because the case didn't involve post-petition property. The instant case involves solely the fate of pre-petition property under § 1327(b).

The Court does not express an opinion in this opinion as to the effect of revesting on property initially acquired by a Chapter 13 debtor subsequent to the filing of the Chapter 13 case, and thus neither endorses nor disavows this portion of the appellate decision in *Fisher.*

scribed in 11 U.S.C. § 1306(a)(1) and (2) vests in the debtor upon confirmation of the plan, subject only to a contrary provision in the plan or in the order confirming the plan. The Seventh Circuit definitely decided that, under the facts of the case, the $50 charge imposed by the Postal Service did not implicate property of the Chapter 13 estate. That is as far as the substantive determination in *Heath* goes [6], and the case has nothing to do with the issue of the effect of § 1327(b)'s revesting upon § 541 property of the Chapter 13 bankruptcy as of the date of the filing of the petition. In essence, *Heath* only decided that the $50 charge imposed by the Postal Service did not conflict with the limited non-vesting provision in the bankruptcy court's confirmation order, and that

the Postal Service was not seeking to collect that charge from property of the Chapter 13 estate.

In the instant case, the plan expressly provided that all property of the estate revested in the debtor upon confirmation pursuant to 11 U.S.C. § 1327(b), and there is nothing in the confirmation order which overcomes the effect of this assertion in the plan. The most that can be said is that the confirmation order required the utilization of 11 U.S.C. § 363 in the event that the debtors sought to "mortgage, sell or otherwise dispose, transfer or encumber ... real property" subsequent to confirmation.[7]

The transfer by the debtor to her parents made by means of a quit claim deed,

6.  Everything else is *dicta*, including the statement that it "would presumably be an abuse of discretion for the bankruptcy judge to confirm a plan that retained more of the property in the hands of the trustee than was reasonably necessary to fulfill the plan [though we need not decide that in this case]"; 115 F.3d 521, 524.

7.  The record clearly establishes that transfer of whatever interest was held in the subject real estate by Brenda on the date of confirmation of her Chapter 13 plan was made by means of a quit claim deed to her parents subsequent to the entry of the confirmation order. This transfer clearly violated the provisions of paragraph 7 of the confirmation order. However, the Court emphasizes that the action filed by the Trustee is one solely pursuant to 11 U.S.C. § 363(h); it is not an avoidance action seeking to set aside that transfer. A transfer was clearly made, and the quit claim deed was recorded of record, thereby notifying the world—including potential subsequent transferees or bonafide purchasers of that property—that title to that property was held exclusively by James Olsen and Derlene Olson. The Trustee asserts— without citation of authority—that the transfer by quit claim deed was void as a violation of the confirmation order. The Court respectfully disagrees. The transfer might have been *avoidable* under the provisions of 11 U.S.C. § 549(a) but perhaps not, as the "trigger" for that section is that the property subject to the

postpetition transaction have been "property of the estate"; *See, In re Wilson*, 2006 WL 2348539 (Bankr.D.Dist.Col.2006), but the Trustee has cited no authority, and the Court is unaware of any, which provides that the transfer was void *ab initio*. Because of the ramifications of *ipso facto* voiding a recorded transfer without consideration of any consequence to potential parties dealing with the transferees—either directly with respect to the subject real estate or by consideration of the subject real estate as an asset of the transferees—the Court will not hold that this transfer was simply void. The adversary proceeding before the Court does not seek to avoid the transfer made by the quit claim deed, and thus that transfer stands for the purposes of any issue sought to be determined in this case. Not to fault the Trustee—this is a very complicated set of circumstances and very complicated law applicable to those circumstances—but any action to seek to avoid that transfer is now precluded by the limitation period of 11 U.S.C. § 549(d)(1). Additionally, any issue under 11 U.S.C. § 549(d)(1) was effectively abrogated by the order of the Porter County Superior Court in the dissolution of marriage action between Brenda and William Krick. In that action, Brenda did not seek to "sell ... (or) transfer" her interest in the subject property in a manner which implicated 11 U.S.C. § 363, or the provisions of paragraph 7 of the confirmation order. The trial testimony established that James and Derlene

while in violation of the confirmation order, is now beyond the Trustee's recourse to reverse. The determination of the Porter Superior Court in the dissolution of marriage action has not been challenged [8] and, as a result, as of the effective date of that decision, neither the debtor nor the debtor's bankruptcy estate retained an interest in the subject property which could act as a predicate for an action under 11 U.S.C. § 363(h).

But what of the effect of 11 U.S.C. § 348(f)(1)(A)?

11 U.S.C. § 348(f)(1)(A) provides that property of the Chapter 7 estate includes property of the Chapter 13 estate, "as of the date of the filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion". The evidence in this case establishes that as of the date of conversion of Brenda's Chapter 13 case to a case under Chapter 7, she had transferred her interests in the subject real estate back to her parents. Additionally, as of the date of conversion, the Porter Superior Court had determined, in a judgment which is binding upon Brenda and thus upon the Trustee in relation to Brenda's interests in the subject property [9], that the subject real estate was in fact the property of James

actively asserted their interests in the subject property in the dissolution of marriage action independently of Brenda's assertions, and that the court in the dissolution of marriage action decided those property interests accordingly

8. As provided by I.C. 31–15–7–9.1, orders concerning property dispositions entered in a dissolution of marriage action may only be challenged based upon fraud. The Trustee has not challenged the dissolution order in the state court, and, based upon the record in this case, the Trustee would indeed be ill advised to do so.

9. Predicated on theories which the Court's analysis has eschewed, the Trustee argues that the decision in the dissolution of marriage action—that Brenda had no legal interest in the subject real estate—is not binding upon her under principles of collateral estoppel. The Trustee argues that one of the prongs for the application of this doctrine is missing, i.e. that the prior decision binds only parties and "parties in privy", and that in her capacity as the representative of creditors in Brenda's Chapter 7 case, the Trustee is not in privity with any party in the dissolution action and thus is not bound by its result. This argument first assumes that creditors *could be* potential parties in a dissolution of marriage action, for without the ability of a creditor to intervene in that action, it is clear that a dissolution decree's determination of property interests of the parties is subsequently binding

on the world. Researching high and low in state databases throughout the country, the Court could not find a single reported decision in which the issue of a creditor's standing to intervene in a dissolution of marriage proceeding was addressed, with the sole exception of *Warsco v. Hambright*, 762 N.E.2d 98 (2002). In *Warsco*, the Indiana Supreme Court reversed decisions of the trial court and of the Indiana Court of Appeals which had allowed a Chapter 7 Trustee to intervene in the debtor's paternity action. The Court determined that the focus of the Trustee's interest—a debt for child support arrearage—was not property of the debtor's bankruptcy estate, but rather a chose in action held by the debtor in trust for the benefit of her children. Thus, the focus of the trustee's interest did not constitute property of the debtor's bankruptcy estate, and the trustee could not intervene in the paternity action. In the instant case, as a result of the revesting effected by 11 U.S.C. § 1327(b), Brenda's interest in the subject real estate was not property of her bankruptcy estate when the dissolution of marriage action was determined, and creditors subject to the Chapter 13 proceeding had no interest at that time which could sustain a right to intervene. This is beside the point that the Court has great difficulty in believing that Indiana courts would develop a rule which allows creditors of either or both of the parties to a dissolution of marriage action to muck up that action by intervening in it. Finally, and most importantly, the Trustee's argument mistakes her stake in this adversary

and Derlene. Both the transfer by deed and the determination of the Porter Superior Court divested Brenda of any legal or equitable interest in the subject property, and in the Court's view, therefore precluded that property from being within the scope of 11 U.S.C. § 348(f)(1)(A).

■ The evidence establishes that Brenda resides in the subject property, and thus that in a sense she is in possession of it as a tenant. This is not the type of "possession" required by 11 U.S.C. § 348(f)(1)(A) to cause the subject property to constitute ˙property of Brenda's Chapter 7 estatè. The Court has been unable to find any cases on point with respect to the construction of "possession of the debtor" in 11 U.S.C. § 348(f)(1)(A) in the context of this case. The Court is thus free to determine the law on its own. The concepts of "possession" or "control" in § 348(f)(1)(A) presuppose a legal proprietary ownership interest in property sufficient to cause that property to constitute property of the estate under 11 U.S.C. § 1306 on the date of the Chapter 13 petition, which legal proprietary ownership interest continues to exist in some form as of the date of the conversion of the case to Chapter 7. Under the circumstances of this case, Brenda's conveyance of her interest in the property to her parents, and the determination of the Porter County, Indiana Superior Court, caused her to no longer have a legal proprietary interest in the property upon which the concepts of either "possession" or "control" contemplated by § 348(f)(1)(A) could operate. These concepts may be illustrated as fol-

lows. On the date of the filing of her Chapter 13 case, let's say that a debtor owns a house in fee simple in which she resides. The plan is confirmed without control for revesting, and by operation of 11 U.S.C. § 1327(b), all of the debtor's interests in the house revest in her to the exclusion of her Chapter 13 estate. The debtor then converts her Chapter 13 case to a case under Chapter 7.

1. Scenario 1: No change in circumstances; the debtor still owns the house and lives in it. The house is thus in both her "possession" and "control", and thus constitutes property of her Chapter 7 estate.

2. Scenario 2: Between the date of confirmation of her plan and the date of conversion, the debtor moves out of the house and rents it to her cousin. The house is no longer in her "possession", but is still within her "control", and thus is property of her Chapter 7 estate.

3. Scenario 3: Between the date of confirmation of her plan and the date of conversion, the debtor sells the house. The house in longer in either her "possession" or "control" on the conversion date, and thus is not property of her Chapter 7 estate.

4. Scenario 4: Between the date of confirmation of her plan and the date of conversion, the debtor sells the house to her brother, but then leases it from her brother as her residence. The debtor is in a sense both in "possession" and in "control" of the house, but because she has no legal proprietary ownership interest in the property, the only interest

proceeding. This is not an avoidance action in which the Trustee hypothetically asserts the interests and derivative avoidance position of a creditor/creditors. 11 U.S.C. 363(h) is predicated on the debtor's bankruptcy estate's interest in property, and thus the Trustee steps into the shoes of the debtor, not into the shoes of creditors. The debtor's interest was

determined conclusively in the dissolution of marriage action, and in the shoes of the debtor the Trustee is bound by that determination; *See, In re Brown*, 227 B.R. 875 (Bankr. S.D.Ind.1998). On the date of conversion of Brenda's Chapter 13 case to a case under Chapter 7, Brenda no longer had a legal ownership interest in the subject property.

her Chapter 7 estate is her leasehold interest.

The instant case presents Scenario 4. Brenda's interests in the subject property on the date of conversion of her case did not constitute either "possession" or "control" of the property as required by § 348(f)(1)(A) to constitute her co-tenancy interest as of the date of the filing of her Chapter 13 case to become property of her Chapter 7 estate.

■ There is an inherent inconsistency between § 348(f)(1)(A)'s "relation back" to the date of the petition and the "re-vesting" provision of 11 U.S.C. § 1327(b). This Court has determined that § 1327(b) means *exactly* what it states: upon confirmation of a plan, absent a plan provision or a provision in the confirmation order which provides otherwise, pre-petition property constituting property of a Chapter 13 estate re-vests completely in the debtor. This case presents even a stronger example of re-vesting, in that the plan itself provided for that result. However, followed to its logical extreme, if all property revests in the debtor upon confirmation, then there can be no pre-petition Chapter 13 interests of the debtor in property in the Chapter 7 estate. But ... this interpretation would ignore the phrase "as of the date of filing the petition" in 11 U.S.C. § 348(f)(1)(A). That phrase must be given effect. The proper reconciliation of the two statutes is that § 348(f)(1)(A) *effects a revesting* of property of the debtor into the Chapter 7 estate, to the extent that on the date of conversion, the debtor remains in "possession" or "control" of the interests in that property which caused that property to be property of the Chapter 13 estate; *See, In re John*, 352 B.R. 895 (Bkrtcy. N.D.Fla.2006).

Applying the foregoing analysis to the instant case, upon confirmation of her Chapter 13 plan, *whatever interest* Brenda had in the subject real estate re-vested in her and no longer constituted property of her bankruptcy estate. She was free to deal with it as she might [subject to obtaining court approval of a voluntary transfer, discussed above], and thus free to have the Porter Superior Court determine her interest in it. As of the date of conversion of her Chapter 13 case to a case under Chapter 7, she had been divested of her ownership interest in the property by a court determination which was totally binding on her. As a result, the property was no longer in her "possession" or "control" on the date of conversion, and no legal proprietary ownership interest in the property revested in her Chapter 7 estate by operation of 11 U.S.C. § 348(f)(1)(A). Because Brenda had no legal proprietary ownership interest in the property which became property of her Chapter 7 estate, there is no interest of the estate in that property to provide the necessary predicate interest for the implementation of 11 U.S.C. § 363(h). The Trustee's prayer for relief in this adversary proceeding is therefore denied.

■ The foregoing analysis makes perfect sense. The distinction between "property of the estate" and "property of the debtor" is critical to a number of provisions of the Bankruptcy Code. Many of the provisions of 11 U.S.C. § 362(a) relate to this distinction, by providing that certain actions against "property of the estate" are precluded while allowing certain actions against "property of the debtor". 11 U.S.C. § 1306(b)—a provision which does not really address the distinct concept of "control" over property—provides that unless otherwise provided in a confirmed plan or an order confirming a plan, "the debtor shall remain in possession of all property of the estate". The requirements of the statutory process of 11 U.S.C. § 363 depend upon whether or not property

sought to be used or sold is property of the estate, as contrasted to property of the debtor. The concept of re-vesting returns *all* control of at least all pre-petition § 541 property to the debtor as of the effective date of confirmation of a plan. Creditors are then left with a Court-enforceable payment arrangement, as generally described in *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir.1999) as follows:

> Chapter 13 . . . encourages the debtor to pay his debts over time by establishing a court-approved payment plan but leaving the debtor in possession of the estate. *See* 11 U.S.C. § 1303 (debtor-in-possession has substantially same powers as the trustee in other chapters); § 1306(b) (debtor retains possession of estate except as limited by plan). The trustee acts as an adviser and administrator to facilitate the repayment of debts according to the plan. *See id.* § 1302.

If the debtor defaults under this payment arrangement, remedies are provided by the seeking of dismissal or conversion under 11 U.S.C. § 1307, or by seeking of relief from the automatic stay by creditors having standing under 11 U.S.C. § 362(d)(1). But if the Chapter 13 case is subsequently converted to a case under Chapter 7, then creditors should benefit from the circumstances that existed on the date of the filing of the Chapter 13 case, subject to the freedom provided by

§ 1327(b) for the debtor to treat his/her/their property as her/his/their own without court intervention at every turn.[10] This is how it should be, unless decreed otherwise by the plan or by the Court in its confirmation order. Chapter 13 is intended in part to provide debtors with a mechanism for imposing a payment arrangement upon creditors to preclude the loss of the essentials of daily living, whether that loss be by means of foreclosure of a mortgage, by effectuation of remedies with respect to security interests in personal property, or by wage garnishment or other collection mechanisms available for the collection of debts. Chapter 13 is essentially geared toward financial reorganization of ordinary people in ordinary circumstances, and the re-vesting provision of § 1327(b) is intended to allow ordinary people in ordinary circumstances to continue with their lives in ordinary ways without consideration of a federal court's intervention in transactions which ordinary people in ordinary circumstances are accustomed to undertaking without an overseer. And so the Court now backs away from this wonderful, euphoric, freeing rhetoric. Because of the significant ramifications of re-vesting under § 1327(b), the Court has determined that debtors who enter the Chapter 13 process *will* be subject to the overseeing of their financial transactions by the Court, by the Chapter 13 Trustee and by creditors affected by their plan.[11] There are

---

**10.** If the debtor "plays around" and converts a case in bad faith, the penalty is clearly provided by 11 U.S.C. § 348(f)(2)—whatever was acquired from the date of confirmation to the date of conversion is property of the Chapter 7 estate. Parenthetically, this provision in the Court's view pretty much negates the validity of the "refiling" analysis of § 1327(b) [subparagraph 3, page 11 above]— if that analysis were correct, the phrase "as of the date of filing of the petition" in § 348(f)(1)(A) is rendered meaningless, and § 348(f)(2) is unnecessary.

**11.** As noted by Judge London, many of the consequences of re-vesting can be avoided by a confirmation order which precludes re-vesting and retains all property of the estate, as defined by 11 U.S.C. § 1306, as property of the Chapter 13 debtor's estate. The confirmation order now utilized by this Court specifically provides that property of the estate of a Chapter 13 debtor does *not* re-vest in the debtor upon confirmation of a Chapter 13 plan. Coincidentally, this provision is also beneficial to debtors, as it prevents post-petition creditors from pursuing property of the

significant advantages to debt arrangements under Chapter 13, and those advantages come with consequences for seeking them. In this case, however, the overseer function was eviscerated by the re-vesting provisions of 11 U.S.C. § 1327(b).

This case has caused a great deal of soul searching by the Court with respect to the foregoing analysis, but the Court is convinced—based both upon legal authority and upon the Court's view of the correct construction of 11 U.S.C. § 1327(b)—that the foregoing analysis fully determines all issues presented by the parties in this adversary proceeding. The Court toyed with the idea of providing an alternative analysis, in part based upon a hypothetical concept that somehow Brenda's interest in the subject real estate survived the "re-vesting" provisions of 11 U.S.C. § 1327(b). The Court declines to invest the time to provide an alternative analysis of this case. The simple bottom-line legal determination is that upon confirmation of Brenda's Chapter 13 plan, she was free to deal with the subject real estate (except, as noted above, with respect to the transfer effected by the quit claim deed), and that whatever interests she may have held in the subject real estate on the date of the filing of the Chapter 13 case did not become property of her Chapter 7 estate. The Court commends the parties for the quality of the factual and legal presentation in this case, and apologizes to the parties for not focusing them upon the issues which determine the outcome of this adversary proceeding.[12]

The Court determines that *whatever* legal proprietary ownership interests in the subject real estate the debtor Brenda Diane Krick may have held on the date of the filing of Case Number 02–62419 did not become property of her Chapter 7 bankruptcy estate in Case Number 05–64279 under 11 U.S.C. § 348(f)(1)(A). Resultantly, because she had no legal proprietary ownership interests in the subject real estate which constituted property of her Chapter 7 estate, the predicate of 11 U.S.C. § 362(h)—that the estate have a proprietary ownership interest in the subject real estate—has not been satisfied. As a result, the Trustee shall take nothing by her complaint, and judgment will be entered in favor of the defendants in this adversary proceeding.

IT IS ORDERED, ADJUDGED AND DECREED that the Trustee shall take nothing by way of her complaint in this adversary proceeding.

estate without first seeking relief from the automatic stay as imposed by 11 U.S.C. § 362(a)(3) and (4). But, note, this protection by confirmation order should not be deemed by debtors to be an endorsement of immunity from the collection efforts of post-petition creditors: that issue is not before the Court in this case.

12. However, had the Court focused the parties upon the issues addressed by the Court under 11 U.S.C. § 1327(b) and 11 U.S.C. § 348(f)(1)(A), the outcome would not have been different. This is an issue with which the Court is thoroughly familiar and with which the Court has been thoroughly familiar since dirt was invented or created; this happens to be the first case in which these "re-vesting" issues have required the Court to issue a decision with respect to them.