**In re David R. CLOUSE, Debtor.**

**No. 08–21825REF.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 28, 2010.

Jennifer R. Alderfer, John A. DiGiamberardino, DiGiamberardino & Lutz, PC, Wyomissing, PA, for Debtor.

Frederick L. Reigle, Chapter 13 Trustee, Lisa Marie Ciotti, Reading, PA, for Trustee.

### STATEMENT SUPPORTING ORDER DATED DECEMBER 28, 2010, GRANTING THE STAY VIOLATION MOTION, DECLARING THE POSTNUPTIAL AGREEMENT VOID, AND GRANTING IN PART AND DENYING IN PART THE STAY RELIEF MOTION

RICHARD E. FEHLING, Bankruptcy Judge.

### I. INTRODUCTION

On or about March 18, 2010, slightly less than one year after confirmation of his Chapter 13 Plan, Debtor entered into a postnuptial[1] agreement with his spouse. Through the agreement, Debtor provided certain distributions of cash and property to be made constituting alimony, support, maintenance, and equitable distribution of marital property. When his bankruptcy counsel learned about the postnuptial agreement, they moved to have it declared void as a violation of the stay of Section 362(a). Counsel for Debtor's spouse then moved for relief from the automatic stay to proceed with state court divorce proceedings and to enforce the postnuptial agreement.

Because the postnuptial agreement distributes cash (presumably from Debtor's current earnings) and other possibly post-confirmation property of the estate to Debtor's spouse, it violated the automatic stay and such distribution provisions are void. To the extent, on the other hand, that the agreement distributes pre-confirmation assets, it did not violate the automatic stay and such provisions could remain in full force and effect. I will therefore grant Debtor's motion, concluding that some of the provisions violate the automatic stay and some do not. Because the agreement is not severable, however, I will declare that the entire agreement is void and not susceptible of enforcement. I will deny the motion for relief of Debtor's spouse insofar as it seeks to enforce the postnuptial agreement, but I will grant the motion for relief in part to permit the parties to determine their pending domestic relations issues in state court.

This Statement constitutes my findings of fact, conclusions of law, and discussion leading to my decisions on the two motions before me.

### II. PROCEDURAL BACKGROUND

Debtor, David R. Clouse ("Debtor") filed this pending Chapter 13 bankruptcy case on August 29, 2008. After going back and forth on confirmation issues with the Chapter 13 Trustee, Debtor filed his Third Amended Chapter 13 Plan (the "Plan") on March 26, 2009. The Plan was confirmed on that same day.[2] After confirmation of the Plan, Debtor's counsel performed mini-

---

1. In their pleadings and briefs, the parties refer to the agreement variously as "postnuptial," "post nuptial," and "post-nuptial." For the sake of clarity, I will use only one of these suggested spellings. Because Title 23, Part IV, Chapter 31, 23 Pa.C.S.A. § 3104 (jurisdiction of Pennsylvania courts to determine issues arising out of, inter alia, postnuptial

agreements), uses the term "postnuptial," I will do so also.

2. Debtor filed his First Amended Plan on February 5, 2009, and filed his Second and Third Amended Plans on March 25 and 26, 2009, respectively. Counsel for both Debtor and the Chapter 13 Trustee agreed that the only

mal work for him. Debtor and his counsel appear to have had little contact after mid–2009; counsel had represented Debtor in nothing more until this dispute arose in mid–2010.

■ Debtor's Chapter 13 Plan was not extraordinary. One provision, in particular, pertains to my review of this case. Paragraph 7 of the Plan provides as follows:

> *Automatic stay*—Except and unless set forth in this Plan, confirmation of this Chapter 13 Plan shall not affect, alter, modify or terminate the stay provided in 11 U.S.C. 362(a).

Plan, ¶ 7, Document 25 on the Docket of this case.[3] Debtor had no provisions in his Plan relating to vesting of property of the estate back in Debtor.

On July 22, 2010, Debtor's counsel filed Debtor's Motion To Determine Postnuptial Agreement Void and Entered in Violation of the Automatic Stay (the "Stay Violation Motion"), asking me to declare that the postnuptial agreement, dated March 18, 2010 (the "Agreement"), is void. Debtor's spouse, Corrine R. Clouse ("Spouse"), filed (1) her Answer of Respondent, Corrine R. Clouse, to Debtor's Motion To Determine Postnuptial Agreement Void and Entered in Violation of the Automatic Stay on August 2, 2010, and (2) her Motion To Lift Automatic Stay Pursuant to 11 U.S.C. § 362 To Proceed with Divorce and Enforce Post Nuptial [sic] Agreement on August 3, 2010 (the "Stay Relief Motion"). Debtor filed his Reply to the Stay Relief Motion on August 11, 2010 (the "Stay Relief Reply").

I continued the initial hearing, scheduled on August 19, 2010, for the Stay Violation Motion, so that I could hear it together with the Stay Relief Motion on August 31, 2010.[4] I took both the Stay Violation Motion and the Stay Relief Motion under advisement[5] and ordered the parties (using their suggested dates) to file their initial briefs by October 1, 2010, and their reply briefs, if any, by October 8, 2010. Both parties filed their initial briefs, but did not file reply briefs.

Upon my initial review of the parties' briefs, I entered my Order on November 18, 2010, requiring Debtor and Spouse to file supplemental briefs[6] by November 24, 2010, and December 1, 2010, respectively. My November 18, 2010 Order also encouraged the Chapter 13 Trustee to file his

---

changes from the First Amended Plan in the Second and then Third Amended Plans benefitted creditors and parties in interest and did not require re-noticing. My review of the changes in the proposed plans convinced me that they were correct.

3. I hereby take judicial notice of the items filed on the Docket in this case, including Debtor's Plan. *See In re Jabarin*, 395 B.R. 330, 334 n. 3 (Bankr.E.D.Pa.2008).

4. By consenting to the hearing and post-hearing briefing orders, I deem the parties to have consented to tolling the time, provided by Section 362(e), within which the Stay Relief Motion should otherwise have been heard. 11 U.S.C. § 362(e). *In re Aulicino*, 400 B.R. 175, 180 (Bankr.E.D.Pa.2008).

5. Counsel for both parties participated in the August 31, 2010 hearing and agreed, at that time, that no factual issues exist. As I note below in this Statement, this is not entirely accurate. A number of open questions about the terms of the Agreement may not have been disputed, but they remain unanswered. Nevertheless, non-resolution of the open factual matters does not impede my decision on the merits of this dispute.

6. Specifically, I ordered the parties to discuss, with citations to case law and statute, the impact of Sections 362(c)(1) and 1327(b), 11 U.S.C. §§ 362(c)(1) and 1327(b), and of Paragraph 7 of Debtor's confirmed Plan. Both parties discussed Section 1327(b) in conjunction with Section 1306(a), 11 U.S.C. § 1306(a), in their briefs.

statement on the issues at hand. The parties and the Chapter 13 Trustee complied with the briefing schedule. Finally, I ordered the parties to appear in oral argument conducted on December 21, 2010, to discuss the effect of *Johnson v. Johnson (In re Johnson)*, 51 B.R. 439, 443 (Bankr. E.D.Pa.1985), specifically insofar as it might impact allowing state court divorce proceedings and equitable distribution issues to proceed without also permitting disposition of property of the estate. This matter is now ripe for determination.

### III. FACTUAL BACKGROUND

Slightly less than one year after confirmation of Debtor's Plan, he signed the Agreement without the benefit of counsel. Debtor and Spouse intended the Agreement to make a final settlement of their respective family property rights and personal affairs.[7] The Agreement includes a number of paragraphs that describe how certain property of Debtor shall be distrib-

uted or retained in the parties' domestic dispute.[8] The Agreement also has a number of "house-keeping" paragraphs that describe how the Agreement shall be administered.

Summaries of the distributive paragraphs of the Agreement follow:

Paragraph 2—Debtor shall pay $3,000 per month to Spouse;[9]

Paragraph 3—Debtor shall maintain life and disability insurance;[10]

Paragraph 4—Debtor shall distribute one-half of his Vanguard retirement account to Spouse;[11]

Paragraph 5—Debtor shall award sole and exclusive possession of the former marital residence at 801 East Main Street, Birdsboro, Berks County, Pennsylvania to Spouse, and after September 2016 (after Debtor's Plan should have been totally consummated and closed) the marital resi-

---

7. Agreement, p. 1, fifth WHEREAS clause, attached as an exhibit to both the Stay Violation Motion and the Stay Relief Motion.

8. Although I will examine all distributive provisions in the Agreement in the context of their possible violation of the automatic stay of Section 362(a)(3), both parties told me (incorrectly) at the August 31, 2010 hearing that the only issue was treatment of the marital residence. *See also* Spouse's Brief in Opposition to Stay Violation Motion, p. 3, filed September 29, 2010 ("The issue before the Court is solely the issue of the exclusive possession of the marital home...."). *But see* Brief in Support of Stay Violation Motion and in Partial Opposition to Stay Relief Motion, p. 2, filed October 1, 2010 (Debtor changed his position and identified numerous distributive provisions of the Agreement that allegedly violated the stay).

9. Agreement, p. 3, ¶ 2. I assume that this payment comes from Debtor's current, post-confirmation earnings.

10. Agreement, p. 3, ¶ 3. This is one of the provisions of the Agreement for which all facts are not resolved. Did the life and dis-

ability insurance policies exist before confirmation of Debtor's Plan? Although Debtor did not disclose them in section 9 of Debtor's Schedule B, Debtor could have acquired them post-petition but pre-confirmation. Were the policies created after confirmation of his Plan? If they existed before confirmation, had Debtor paid the policies in full before confirmation of his Plan or are periodic premiums required? Were they and are they being funded by current earnings? These factual questions would be much more important if the life and disability insurance policies were the only items of distribution addressed in the Agreement.

11. Agreement, p. 4, ¶ 4. Did the Vanguard retirement account exist before confirmation of Debtor's Plan? Debtor did not disclose the account at sections 10, 11, or 12 of his Schedule B. If created before confirmation, was the account paid in full before confirmation of the Plan? Was it created after confirmation of Debtor's Plan? Was it and is it funded or increased by current earnings?

dence [12] shall be sold, dividing the net proceeds between Debtor and Spouse; [13]

Paragraph 6A—Debtor shall transfer an Oldsmobile Intrepid [sic] [14] and all items of personal property in current possession of Spouse to Spouse; [15]

Paragraph 6D—Debtor and Spouse shall maintain a Mercury SUV for the use of their son Jesse; [16]

Paragraph 8—Debtor may dispose of his property through his will; [17]

Paragraph 9—Debtor shall pay Spouse's attorneys' fees that might arise if he breaches the Agreement; [18]

Paragraph 10—Debtor shall indemnify and hold Spouse harmless from demands made against her by reason of any effort of a third party to collect Debtor's debt from her; [19]

Paragraph 11B—Debtor shall release Spouse of all actions or claims he has or might have against her; [20]

12. The parties agree that the home property constitutes marital property.

13. Agreement, pp. 4–5, ¶ 5. Based upon the parties' statements in their pleadings and in argument to me at the August 31, 2010 hearing, and based upon Debtor's Schedule A, Debtor and Spouse owned the marital residence jointly at the time Debtor filed his petition initiating his Chapter 13 bankruptcy.

I believe, but have only my general knowledge of property values over the past couple years to support my belief, that the value of the marital residence did not appreciate following confirmation of his Plan during this time of real estate devaluation. At oral argument on December 21, 2010, the parties discussed the effect of appreciation of property that vests back in a debtor pursuant to Section 1327(b), but they implicitly agreed that no appreciation had occurred in this instance. Courts have viewed post-confirmation appreciation differently—some deeming the appreciation in value as new property of the estate and others viewing property of the debtor as remaining debtor's, even if it appreciated post-confirmation. *See, e.g., Salas v. Trustee (In re Salas)*, No. 2:05–cv–1107–GEB, 2006 WL 2788313 (E.D.Cal. Sept.26, 2006). The appreciation of debtor's property is not now before me, so I will not further address this issue in dicta.

14. Agreement, p. 5, ¶ 6.A. General Motors' Oldsmobile Division did not manufacture the Intrepid model automobile; Chrysler Motors' Dodge Division manufactured the Intrepid model.

15. Agreement, p. 5, ¶ 6.A. Debtor disclosed no Intrepid in section 25 of his Schedule B. Did Debtor own or possess the Intrepid before confirmation of his Plan? Had he financed and paid for it at least in part before confirmation of his Plan? Had he acquired it after confirmation of his Plan? Was it and is it being paid for by Debtor's current, post-confirmation earnings?

16. Agreement, p. 5, ¶ 6.D. Debtor discloses, as joint property with Spouse, in Section 25 of Debtor's Schedule B, a 1997 Mercury Mountaineer, which fits the description of the model "Mercury SUV." Debtor did not disclose in his Schedule D any creditor holding a security interest in the Mercury SUV. The Mercury SUV, therefore, was property of Debtor's estate when Debtor filed his initial petition in bankruptcy and, apparently, remained in Debtor's possession until confirmation of the Plan, when it would have vested back in Debtor.

17. Agreement, p. 6, ¶ 8. Any disposition of property by Debtor through his will may be subject to revision or negation, depending on the nature of the property.

18. Agreement, pp. 6–7, ¶ 9. I assume that this payment comes from Debtor's current, post-confirmation earnings.

19. Agreement, p. 7, ¶ 10. I assume that the potential indemnification payment would come from Debtor's current, post-confirmation earnings.

20. Agreement, pp. 7–8, ¶ 11.B. Did Debtor own or possess claims against Spouse before confirmation of Debtor's Plan? Debtor disclosed no claims against Spouse in Section 21 of his Schedule B. Did Debtor acquire any claims against Spouse after his initial filing and before confirmation of his Plan? Or did

Paragraph 13—Debtor shall waive any rights or claims that he has against Spouse that might arise out of their marital relationship; [21]

and Paragraph 14—Debtor shall pay Spouse's counsel $300 for preparation of the Agreement.[22]

The parties signed the Agreement in anticipation of the pending filing of a divorce between Debtor and Spouse.[23] On April 13, 2010, Spouse initiated a divorce action against Debtor by filing a complaint in divorce in the Court of Common Pleas of Berks County, Pennsylvania, to Docket No. 10–7011 (the "Divorce Proceeding").[24]

## IV. DISCUSSION, INCLUDING CONCLUSIONS OF LAW

Resolution of this matter requires review, interpretation, and reconciliation of a number of sections of the Bankruptcy Code. The interplay and interconnectedness of Sections 362(a), 541(a), 1306(a), and 1327(b) are at the heart of my consideration of this case. But I must also interpret and construe the Agreement and Debtor's Chapter 13 Plan and some subordinate legal issues that arise out of them also.

### A. Enforcement of the Postnuptial Agreement.

#### 1. The Effect of the Language of Paragraph 7 of the Plan.

Paragraph 7 of the Plan states:

*Automatic stay*—Except and unless set forth in this Plan, confirmation of this Chapter 13 Plan shall not affect, alter, modify or terminate the stay provided in 11 U.S.C. 362(a).[25]

I conclude that this paragraph means precisely what it says: Confirmation of Debtor's Plan did not and does not affect, alter, modify, or terminate application of the automatic stay of Section 362. That is, if and to the extent that the automatic stay might be applicable to either post-confirmation Debtor, Debtor's property after confirmation, or post-confirmation property of the bankruptcy estate, the stay is not affected by confirmation of his Plan.

#### 2. Waiver of the Automatic Stay.

■ Spouse argues, in support of her request that I enforce the Agreement, that Debtor waived the automatic stay by participating in the post-confirmation process of negotiating and executing the Agreement.[26] First, a debtor without counsel

---

any claims Debtor might have against Spouse arise after confirmation of his Plan?

**21.** Agreement, p. 8, ¶ 13. Did Debtor own or possess "marital" claims against Spouse before confirmation of Debtor's Plan? Debtor disclosed no "marital" claims against Spouse in Section 17 of Debtor's Schedule B. Did Debtor acquire any "marital" claims against Spouse after his initial filing and before confirmation of his Plan? Did Debtor's "marital" claims against Spouse arise after confirmation of his Plan?

**22.** Agreement, p. 9, ¶ 14. I assume that this payment came from Debtor's current, post-confirmation earnings.

**23.** Agreement, p. 1, second WHEREAS clause.

**24.** Stay Relief Motion, p. 2, first ¶ 4; Stay Relief Reply, p. 2, first ¶ 4.

**25.** *See* n. 3, *supra.*

**26.** The ability or capacity of a debtor to waive his right to the automatic stay *before* filing for bankruptcy is different and has met with mixed results by courts. *See In re Jenkins Court Associates Ltd. Partnership*, 181 B.R. 33, 35–37 (Bankr.E.D.Pa.1995) (discussing various courts' approaches to the issue) (Raslavich, J.). Although Judge Raslavich decided the *Jenkins Court* case 15 years ago, his analysis remains appropriate for courts in the Third Circuit to consider today.

may not be aware (1) that the stay existed or (2) of the ramifications of ignoring the stay.

Second, in a Chapter 13 case, the Chapter 13 Trustee has much to say about waiving or otherwise limiting the automatic stay and waiver of the stay without at least notice to the Trustee is problematic.

■■■ Third, nothing in Section 362 authorizes a debtor to waive the automatic stay unilaterally. The sub-section generally utilized to obtain termination, annulment, modification, or conditional relief from the stay, Section 362(d), speaks solely to relief being granted by the court.[27] The automatic stay is intended, at least in part, to protect creditors and other parties in interest of the bankruptcy case, and not merely a debtor.[28] Under the old Bankruptcy Act, a debtor could waive a stay with nothing more. But under the Bankruptcy Code, the Bankruptcy Court must supervise relief from the stay to (1) prevent some creditors from gaining a preference for their claims against debtor, (2) forestall the depletion of the debtor's assets arising from legal costs in defending proceedings against debtor, and (3) avoid interference with the orderly administration of the debtor's case and the estate. *See Association of St. Croix Condo. Own-*

*ers v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982).

Nothing in the record reflects any notice of Debtor's attempted waiver to, or consent by, Debtor's bankruptcy counsel, the Chapter 13 Trustee, or any creditor or other party in interest of the estate.[29] Nothing in the record reflects my approval of the waiver of the stay. I reject Spouse's waiver argument.

### 3. The Automatic Stay of Section 362.

■■ Bankruptcy Judge Mary France has recently analyzed the application of Section 362 to post-confirmation Chapter 13 debtors and estates in *In re Chang,* 438 B.R. 77 (Bankr.M.D.Pa.2010). I will draw heavily from her *Chang* opinion for much of my discussion in the next two sections of this Statement. I quote Judge France's analysis of the workings of Section 362 in situations relating to property of the estate issues such as I now face:

> Section 362(a) describes eight actions that are stayed by the filing of a bankruptcy petition. 11 U.S.C. § 362(a). Six of these provisions address actions commenced before a petition is filed or which could have been commenced prepetition. *See* 11 U.S.C. § 362(a)(1), (2), (5), (6), (7), and (8). The parties have stipulated that the claim [creditor] as-

27. 11 U.S.C. § 362(d).

28. The stay prevents an unfair race to the courthouse among creditors, which is for their benefit in obtaining an orderly distribution of the estate. The automatic stay is, of course, also intended to give a debtor in bankruptcy some "breathing room" to prepare a confirmable plan. *U.S. v. Nicolet, Inc.,* 857 F.2d 202, 206–07 (3d Cir.1988).

29. The parties appear to agree that Spouse did not know that Debtor's bankruptcy and the stay remained in effect. Neither did Spouse's counsel know about the possible lingering effect of the stay in a post-confirmation, pre-closing Chapter 13 case. This con-

stitutes a very different circumstance from a creditor or other party in interest knowing that a bankruptcy case exists but nonetheless taking action against a debtor and property of the estate during the administration of the case. *See In re Douglas Young Builder, Inc.,* No. 09–21940, 2009 WL 2827959 (Bankr. E.D.Pa., September 1, 2009); *In re Keppel,* No. 09–22293 (Bankr.E.D.Pa., November 13, 2009); *In re Mikulski,* No. 10–21594 (Bankr. E.D.Pa., August 18, 2010) (transcript of oral statement filed September 2, 2010). The record in the matter before me provides no grounds for sanctions against Spouse or her counsel resulting from their actions in this matter.

serts against Debtor arose after both the petition was filed and the Plan confirmed. Therefore, under these facts, only two of the enumerated paragraphs under § 362(a)—paragraphs (3) and (4)—are relevant.

Section 362(a)(3) provides that the filing of a petition operates as a stay of: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over the estate." Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." Implicit in these provisions is the principle that when post-petition claims are asserted, the stay applies only to actions against property of the estate and does not bar the commencement of an action against the debtor or property of the debtor. *Chang*, 438 B.R. at 79–80. Judge France followed her discussion of Section 362(a) with her analysis of what assets in a post-confirmation, pre-closing Chapter 13 case were assets of the estate subject to the automatic stay of Sections 362(a)(3) and (a)(4).

Section 362(c)(1) provides that the automatic stay of an act against property of the estate continues until such property is no longer property of the estate. 11 U.S.C. § 362(c)(1). The controlling, primary legal issue before me therefore is what constitutes property of the estate at the time of the Agreement (March 2010), which was one year after confirmation of the Plan and thereafter during the administration of Debtor's payments to the Chapter 13 Trustee pursuant to the Plan. Does property of the estate include the assets that are the objects of the Agreement's clear manifestation of possessing or controlling? What is property of the estate in Debtor's post-confirmation Chapter 13 bankruptcy?

### 4. *Property of the Chapter 13 Estate.*

Whether specific property is or is not property of Debtor's Chapter 13 estate depends upon the application and balancing of Sections 541(a), 1306(a), and 1327(b) of the Bankruptcy Code. The difficulty of rationalizing these sections, insofar as they relate to application of Section 362, has long perplexed and continues to challenge both bankruptcy courts and the parties to this dispute.

Judge France began her review of the law relating to property of the Chapter 13 estate with the basics in *Chang*. She started with what constitutes property of the estate pursuant to Section 541(a) of the Bankruptcy Code. Under all chapters of the Bankruptcy Code, Section 541(a) defines what is property of the bankruptcy estate. *Chang*, 438 B.R. at 80.[30] Estate property generally consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[31] In a Chapter 13 case, however, property of the estate also includes:

(1) [A]ll property of the kind specified in such section [Section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

---

**30.** *Citing Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340 (11th Cir.2000); *Black v. U.S. Postal Service (In re Heath),* 115 F.3d 521, 524 (7th Cir.1997); *City of Chicago v. Fisher (In re Fisher),* 203 B.R. 958, 960 (N.D.Ill.1997) (*"Dist. Ct. Fisher"*). As I had noted previously, much of my language and analysis in this section of the Statement is drawn from *Chang*.

**31.** *See also In re Chandler,* 441 B.R. 452, 462 (Bankr.E.D.Pa.,2010).

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Section 1306(a) expands the scope of property of the estate in Chapter 13 cases by including property acquired by the debtor after the filing of the bankruptcy petition.

The Chapter 13 estate, however, is not immutable. *Chang* at 80. Plan confirmation significantly alters the composition of the estate. Section 1327(b) provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). "Estate" and "debtor" describe very separate and distinct "holders" of property. Section 1306(b) provides: "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." When property of the estate vests back in the debtor under Section 1327(b), the debtor acquires something more than the mere possession of the property that he [32] held at the inception of the case under Section 1306(b). *Chang* 438 B.R. at 80.[33]

■ When property vests in a debtor, he obtains absolute ownership and control of the property. *Id.*[34] Because a Chapter 13 debtor has the right to possess property of the bankruptcy estate from the inception of the case, vesting must mean "transferring absolutely" or it means "nothing at all."[35] The vesting of all of the property of the estate in the debtor under Section 1327(b) means exactly what it says—except as otherwise provided in the plan or the order of confirmation, property of the Chapter 13 estate moves out of the estate and into the ownership and control of the debtor upon confirmation of the plan.[36]

Standing alone, the language of both Sections 1306(a) and 1327(b) is simple and unambiguous, but reconciling the interplay of the two sections is difficult. Three early, distinct approaches to reconciling Sections 1306(a) and 1327(b), were termed "estate termination," "estate preservation," and "estate transformation." *Chang,* 438 B.R. at 81.[37] A number of additional, modified approaches have been suggested more recently. *Id.*[38]

---

**32.** Judge France uses the masculine pronoun "he." Political correctness aside, if she can do it, I will do it.

**33.** *See Yoon v. Krick (In re Krick),* 373 B.R. 593, 601 (Bankr.N.D.Ind.2007).

**34.** *See American General Finance, Inc. v. McKnight (In re McKnight),* 136 B.R. 891, 894 (Bankr.S.D.Ga.1992); *In re O'Brien,* 181 B.R. 71, 74 (Bankr.D.Ariz.1995).

**35.** *Chang,* 438 B.R. at 81 n. 3. *See* David Gray Carlson, "The Chapter 13 Estate and Its Discontents," 17 Am. Bankr. Inst. L. Rev. 233, 241 (2009).

**36.** *See* 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 230.1, at 230–1 (3d ed. 2000 & 2004 Supp.).

**37.** *See In re Fisher,* 198 B.R. 721, 724–25 (Bankr.N.D.Ill.1996), *rev'd on other grounds,* 203 B.R. 958 (N.D.Ill.1997) (*"Bkrtcy. Ct. Fisher"*).

**38.** *See, e.g., In re Powers,* 435 B.R. 385, 387 (Bankr.N.D.Tex.2010) (courts have used one of five approaches—reconciliation, estate termination, estate transformation, estate preservation, and modified reconciliation); *Rodriguez v. Countrywide Home Loans, Inc., (In re Rodriguez),* 421 B.R. 356, 373 (Bankr.S.D.Tex. 2009) (courts have used one of four approaches—reconciliation, estate termination, estate transformation, and estate preservation); *In re Dagen,* 386 B.R. 777, 782 (Bankr. D.Colo.2008) (courts have used one of four approaches—estate preservation, modified estate preservation, estate transformation, and estate termination).

Judge France first analyzed the two most extreme approaches. At one extreme is estate preservation; at the other extreme is estate termination. *Chang*, 438 B.R. at 81–82. First, in estate preservation, the vesting of property in the debtor under Section 1327(b) does not transfer absolute ownership to the debtor; all property remains in the Chapter 13 estate.[39] This approach relies on Section 1306(a) to the exclusion of Section 1327(b), which is largely ignored as mere surplusage. Alternatively, "vesting" could mean something less than absolute ownership in Section 1327(b). This approach finds no support in the statutory language, but arose from courts who elected to ignore Section 1327(b) as irreconcilable with Section 1306(a). Recent mandates requiring that courts give strict attention to the plain meaning of all language in various sections of the Bankruptcy Code[40] prevent me from ignoring Section 1327(b) as completely as estate preservation theorizes. I join Judge France in not following the estate preservation approach.

Second, estate termination is the other extreme and is based on Section 1327(b) vesting all property in the debtor at confirmation and the estate simply ceasing to exist. *Chang*, 438 B.R. at 81–82.[41] Courts following this approach do not give full effect to Section 1306(a), which clearly operates as part of a system in which a Chapter 13 estate exists even after plan confirmation. Similarly, the estate simply must exist post-confirmation because the Bankruptcy Code imposes certain duties on the Chapter 13 trustees that can only be undertaken and fulfilled if the Chapter 13 estate continues to exist. *Chang*, 438 B.R. at 82.[42] These duties include, *inter alia:* Accounting for property; receiving, depositing, and investing estate funds; and accounting for all "property of the estate." 11 U.S.C. §§ 345(a), 347(a), 704(a), and 1302(b) & (c). These post-confirmation duties required of Chapter 13 trustees following plan confirmation[43] convince me that the estate does not and cannot terminate at confirmation. I will again join Judge France in not following the estate termination approach.

Between the two extremes of absolute estate preservation (ignoring most of Section 1327(b)) and absolute estate termination (ignoring much of Section 1306(a)) lie several approaches that attempt to reconcile the vesting provision of Section 1327(b) with the broad definition of estate property found in Section 1306(a). *Chang*, 438 B.R. at 82. Although subtle variations exist among each of the "in-between" approaches, Judge France divided them into two general categories. In the first approach, some property of the estate vests in the debtor at confirmation under Section 1327(b), but property essential to the performance of the plan remains in the estate, regardless whether the property was obtained before or after confirmation. *Id.*[44] In the second "in between" ap-

---

**39.** *See, e.g., Bkrtcy Ct. Fisher*, 198 B.R. at 724–25.

**40.** *Schwab v. Reilly*, —— U.S. ——, 130 S.Ct. 2652, 2662–63, 177 L.Ed.2d 234 (2010); *Lamie v. U.S. Trustee*, 540 U.S. 526, 536–42, 124 S.Ct. 1023, 1031–34, 157 L.Ed.2d 1024 (2004); and *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304–10 (3d Cir.2010).

**41.** *See California Franchise Tax Board v. Jones (In re Jones)*, 420 B.R. 506, 515 (9th Cir. BAP 2009).

**42.** *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 690–91 (8th Cir.1993) (supporting the estate preservation approach).

**43.** *See also* Statement of Standing Chapter 13 Trustee Pursuant to November 18, 2010 Briefing Order, Document 64 on the Docket, p. 1.

**44.** Judge France did not identify a name for the first of her "in-between" approaches. I will refer to this first approach as "partial vesting," without trying to tie it to any of the

proach, all property of the estate becomes property of the debtor at confirmation, but the estate "refills" with property acquired by the debtor after confirmation until the case is closed, dismissed, or converted.[45] *Id.*[46] Both the partial vesting and the reconciliation approaches strive to accommodate the two statutory provisions, but each of the "in-between" approaches poses unique conceptual and practical difficulties.

In jurisdictions recognizing partial vesting, property not needed to fund the plan vests in the debtor. Partial vesting attempts to honor, in part, the vesting provision of Section 1327(b), while acknowledging the inclusive language of Section 1306(a). *Chang,* 438 B.R. at 82. Property that is essential to the performance of the Chapter 13 plan remains property of the estate; all other property vests in the debtor.[47] Judge France regarded the partial vesting approach as attractive in concept but difficult to apply in practice. *Id.* Property necessary to fund the plan usually includes a debtor's earnings. Wages would therefore be an asset of the estate in an amount limited to what would be sufficient and necessary to fund the plan. "Excess" income might not be property of the estate and could be property of the debtor. Other assets, such as a truck used in a debtor's business, might also be "essential" to the success of the plan. The same asset, however, may no longer be "essential" if the debtor changes jobs in a later year of the plan. How would a debtor know whether the debtor could sell the truck without court approval? How would a post-confirmation secured creditor who sold debtor the truck know if it could repossess the truck without first seeking relief from the automatic stay? *Id.*

Not only is the partial vesting approach impractical, Judge France found, it runs directly contrary to the explicit provisions of Section 1306(a). *Id.* at 82–83. Section 1306(a) provides no basis to distinguish (1) earnings from (2) other property of an estate. Section 1306(a) also provides no support for differentiating between two "types" of earnings—some of which is property of the estate and some not. Partial vesting also fails to give full effect to Section 1327(b), which provides that all property of the estate, not merely some of it, vests in the debtor upon confirmation. *Chang,* 438 B.R. at 83.

The plain, clear language of Section 1327(b) does not differentiate between property as necessary for a plan or not necessary for a plan. Judge France recognized the absence of statutory underpinnings for separately categorizing post-confirmation property based solely upon whether it is essential to the plan and rejected the partial vesting approach. I agree. *Id.*

■ At the conclusion of her analysis, Judge France adopts the reconciliation ap-

---

names of approaches listed in the cases in footnote 38, *supra.*

**45.** Judge France referred to this second "in-between" approach as "reconciliation."

**46.** *See* 3 Lundin, § 230.1 at 230–5 to 230–10, *cited in Yoon,* 373 B.R. at 600.

**47.** The Eleventh Circuit Court has appears to have adopted the partial vesting approach. In *Telfair,* the Court held that "the plan upon confirmation returns so much of [estate property] to the debtor's control as is not necessary to the fulfillment of the plan." *Telfair,* 216 F.3d at 1340 (*quoting Heath,* 115 F.3d at 524). In a more recent case, however, *Waldron v. Brown (In re Waldron),* 536 F.3d 1239 (11th Cir.2008), the Eleventh Circuit distinguished the facts of (but did not overrule) *Telfair* in a case in which assets were acquired post-confirmation. The *Waldron* Court held that Section 1306(a) caused all post-confirmation assets to remain in the estate with some of the pre-confirmation property that was essential to the plan until the case is closed, converted, or dismissed. *Id.* at 1243.

proach and regards all post-confirmation property acquired by a debtor as estate property. At the same time, none of the partial vesting of pre-confirmation property occurs. Under the reconciliation approach, parties can easily categorize both pre-confirmation property and post-confirmation property. Judge France quoted *Barbosa v. Solomon*, 235 F.3d 31, 36–37 (1st Cir.2000):

> [P]roperty of the estate at the time of confirmation vests in the debtors free of any claims from the creditors. The estate does not cease to exist however, and it continues to be funded by the Debtors' [sic] regular income and post-petition assets as specified in section 1306(a).[48]

*Chang*, 438 B.R. at 83.

Post-confirmation property is obviously not subject to Section 1327(b) because it did not exist at confirmation. Section 1306(a) places this property in the estate. *Chang*, 438 B.R. at 83.[49] The reconciliation theory gives effect to both sections, but it is not easily applied in every situation.[50] Judge France recognized that the reconciliation approach also has weaknesses and does not always harmonize Sections 1306(a) and 1327(b). *Chang*, 438 B.R. at 83. Asking a Chapter 7 debtor to separate pre- and post-petition assets and liabilities is reasonable and rather simple. On the other hand, it is unrealistic to expect a Chapter 13 debtor, who might retain both his property and property of the estate for as long as five years, to keep track of how each asset is titled and when it was acquired to ensure that he does not dispose of estate property without court approval. Theoretically, furthermore, a debtor might be required to obtain court approval for every asset purchased on credit, regard-

less of the amount of the expenditure, unless the purchase was in the "ordinary course of business" as provided in Section 363(b), 11 U.S.C. § 363(b), as incorporated by Section 1303, 11 U.S.C. § 1303. Deciding whether a debtor should purchase new clothes for his children or replace a worn-out washer would quickly grow tedious.

Harmonizing the reconciliation approach with other provisions in the Bankruptcy Code that exclude some post-confirmation assets from property of the estate can be difficult. When a debtor converts a case from Chapter 13 to Chapter 7 in good faith, Section 348(f)(1) provides that property of the estate consists of property of the estate on the petition date that remains in the possession or control of the debtor. 11 U.S.C. § 348(f)(1). *Chang*, 438 B.R. at 83. Specifically, this often includes debtor's home.

But if a debtor converts a Chapter 13 case to Chapter 7 in bad faith, property of the estate consists of property of the estate as of the conversion date. 11 U.S.C. § 348(f)(2). Section 348(f)(2) assumes that estate property exists after confirmation. *Chang*, 438 B.R. at 84. Property of the estate in a post-confirmation conversion generally would not include Debtor's home because it would vest back in debtor under Section 1327(b). Unjust, inappropriate favoring of the bad faith debtor could result in certain circumstances: A good faith debtor could lose his home while a bad faith debtor might not. Judge France examined a number of other possibly anomalous (and possibly unfair) consequences arising from reliance on the reconciliation approach, but ultimately concluded that the reconciliation approach is the best pos-

---

**48.** *Accord Waldron*, 536 F.3d at 1243; *Dist. Ct. Fisher*, 203 B.R. at 962.

**49.** *See U.S. v. Harchar*, 371 B.R. 254, 265 (N.D.Ohio 2007) (citing cases).

**50.** Judge France acknowledged and recognized issues with the reconciliation approach as well as various hypothetical difficulties that might arise. *Chang*, 438 B.R. at 83.

sible approach, given the language and interplay of the various sections of the Bankruptcy Code. *Id.* Yet again, I agree.

As an aside, Judge France concurred in another court's observation in *In re Ziegler*, 136 B.R. 497, 502 (Bankr.N.D.Ill. 1992):

> Remedial legislative drafting would more appropriately solve the conundrum over which ... authorities have labored so long with varying results.

*Chang,* 438 B.R. at 84. Absent appropriate and necessary corrective legislative action and despite the flaws of the reconciliation approach, I agree with Judge France that it best harmonizes Sections 1306(a) and 1327(b).

I therefore conclude that, from the date a Chapter 13 petition is filed, all pre-petition and post-petition property and all post-petition earnings received from services performed by a debtor are property of the estate under Sections 541(a) and 1306(a). Upon confirmation, unless the plan provides otherwise, all property of the estate (whether pre-petition or post-petition) vests back in the debtor under Section 1327(b). After plan confirmation, all property, including earnings, received by a debtor is property of the estate under Section 1306(a).

### 5. Applying the Law to the Postnuptial Agreement.

■ Considering the above analysis of what is and is not stayed by Section 362(a) and of what property is and is not part of the post-confirmation estate, applying the law to the Agreement is straightforward. Certain of the assets identified in the Agreement for distribution are property of the estate, and others are not. If a provision of the Agreement allows Spouse to obtain possession or exercise control over property of the estate, that provision violates the automatic stay of Section 362(a)(3).[51] An item-by-item review of the distributions under the Agreement and whether they violate Section 362(a)(3) follows:

1. Paragraph 2—Debtor shall pay $3,000/month to Spouse. Paragraph 2 violates the stay because Debtor's payments to Spouse, coming as they must from post-confirmation earnings, constitute an attempt by Spouse to take possession, ownership, and control of property of the estate.

2. Paragraph 3—Debtor shall maintain both life and disability insurance policies. I cannot definitively decide whether Paragraph 3 violates the stay because I do not know when the insurance policies were created or how they were or are funded.

3. Paragraph 4—Debtor shall distribute one-half of his Vanguard retirement account to Spouse. I cannot definitively decide whether Paragraph 4 violates the stay because I do not know when the Vanguard retirement account was created or how it was or is funded.

4. Paragraph 5—Debtor shall award possession of the marital residence (801 East Main Street, Birdsboro, Berks County, Pennsylvania) to Spouse, and after September 2016, the marital residence shall be sold, dividing the net proceeds between Debtor and Spouse. Because the marital residence is no longer property of the estate,[52] Paragraph 5 does not violate the stay.

---

**51.** I do not consider the stay of Section 362(a)(4) because the Agreement does nothing to create, perfect, or enforce liens on any assets.

**52.** As discussed above, at footnote 13, *supra,* I believe that Debtor's marital property has not appreciated in value since confirmation of the Plan in March 2009 through the date of this Statement.

5. Paragraph 6A—Debtor shall transfer the Intrepid and all items of personal property in current possession of Spouse to Spouse. I cannot definitively decide whether Paragraph 6A violates the stay because I do not know when the Intrepid or other personal property were acquired or paid for by Debtor.

6. Paragraph 6D—Debtor (and Spouse) shall maintain a Mercury SUV for the use of their son Jesse. Because the Mercury Mountaineer SUV is no longer property of the estate,[53] Paragraph 6D does not violate the stay.

7. Paragraph 8—Debtor may dispose of his property through his will. Paragraph 8, in itself, does not violate the stay because it merely authorizes Debtor to do something in the future. If and when he attempts to do that which the Agreement authorizes, I would need to know when Debtor acquired or paid for any property being disposed of through his will.

8. Paragraph 9—Debtor shall pay Spouse's attorneys' fees that might arise if he breaches the Agreement. Paragraph 9 violates the stay because Debtor's payments to Spouse's attorneys, coming as they must from post-confirmation earnings, constitute an attempt by Spouse and her counsel to take possession, ownership, and control of property of the estate.

9. Paragraph 10—Debtor shall indemnify and hold Spouse harmless from demands made against her by reason of any effort of a third party to collect Debtor's debt from her. Paragraph 10 violates the stay because Debtor's indemnification payments to Spouse, coming as they must from post-confirmation earnings, constitute an attempt by Spouse to take possession, ownership, and control of property of the estate.

10. Paragraph 11B—Debtor shall release Spouse of all actions or claims he has or might have against her. I cannot definitively decide whether Paragraph 11B violates the stay because I do not know when any actions or claims Debtor might have against Spouse arose and therefore I cannot determine if any such claims are property of the estate.

11. Paragraph 13—Debtor shall waive any rights or claims that he has against Spouse that might arise out of their marital relationship. I cannot definitively decide whether Paragraph 13 violates the stay because I do not know when any "marital" actions or claims Debtor might have against Spouse arose and therefore I cannot determine if any such "marital" claims are property of the estate.

12. Paragraph 14—Debtor shall pay Spouse's counsel $300 for preparation of the Agreement. Paragraph 14 violates the stay because Debtor's payment to Spouse's attorneys, coming as it must from post-confirmation earnings, constitutes an attempt by Spouse and her counsel to take possession, ownership, and control of property of the estate.

### 6. The Postnuptial Agreement Is Void, Not Voidable.

▮▮▮ In the Third Circuit, actions taken in violation of the automatic stay are void *ab initio*. *See In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1131 (3d Cir.1992); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991). But the Third Circuit Court has also held that actions undertaken in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annul-

---

**53.** I believe it is extremely unlikely that the Mercury Mountaineer SUV, driven by Debt-or's late teenage or early 20's son, has appreciated since March 2009.

ment of the stay. *See Siciliano,* 13 F.3d at 750.

The term "voidable" implies that actions taken in violation of the stay are valid unless cancelled by some affirmative action, rather than invalid or dormant unless subsequently ratified. *In re Myers,* 491 F.3d 120, 127 (3d Cir.2007). On the other hand, the term "void" implies an absolute bar amenable to no exception. *Id.* The Third Circuit has held that actions violating the stay, although unquestionably void, may nevertheless be made effective through retroactive annulment of the stay. *Id.* But the concept of actions taken in violation of the stay being "voidable" was rejected out of hand by the Third Circuit as imprecise. *Id.*

The various provisions of the Agreement that distribute property of the estate violate the automatic stay and are therefore void, although I could elect to annul the automatic stay and allow those provisions of the Agreement to become valid. I will not do so in this contested matter and Paragraphs 2, 9, 10, and 12 of the Agreement are therefore void and invalid as violating the automatic stay of Section 362(a)(3). The issue remains, however, whether the entire Agreement is void or if merely the violating paragraphs listed above are void. This issue depends upon the severability of the various provisions of the Agreement from the entire Agreement.

## 7. Severability.

▇▇▇▇ Generally under Pennsylvania law, if (1) less than an entire agreement is invalid for whatever reason and (2) the invalid provision is not an essential part or integral to the primary purpose of the agreement, then the balance of the agreement might be enforceable. *See Freedman v. Tozzoli,* 2005 WL 1798081, 71 Pa. D. & C.4th 353, 368 (Lehigh Ct. Comm. Pl.2005).[54] On the contrary, therefore, if the invalid (void) portions of the Agreement are essential or integral to the primary purpose of the Agreement, the entire Agreement must fall as invalid (void). *See Stewart v. GGNSC–Canonsburg, L.P.,* No. 6 WDA 2010, 2010 WL 4361024, at *2 (Pa.Super.Ct., November 4, 2010).

▇▇▇ Spouse refers me to Paragraph 17 of the Agreement as providing a severability clause for me to consider. Paragraph 17 follows:

> *Severability:* The waiver of any term, condition, clause, or provision of this Agreement shall in no way be considered to be a waiver of any other term, condition, clause, or provision of this Agreement.

Agreement, p. 9, ¶ 17. The text of Paragraph 17 has nothing to do with severability [55] other than in its heading, but headings are not part of the Agreement. Paragraph 19 of the Agreement provides:

> *Headings Not Part of Agreement:* The headings preceding the text of the several paragraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agree-

---

**54.** *Freedman* refers to and relies upon *Huber v. Huber,* 323 Pa.Super. 530, 536–38, 470 A.2d 1385, 1389–90 (1984); *Forbes v. Forbes,* 159 Pa.Super. 243, 248–49, 48 A.2d 153, 156 (1946); and Restatement (Second) of Contracts § 184(1) (1981).

**55.** A severability clause should say something along the lines of: "If any provision of this agreement is determined to be invalid, void, or ineffective for any reason, all remaining provisions of the agreement shall remain in full force and effect between the parties." Paragraph 17, on the other hand, is a "no waiver" clause: Waiver of one term does not constitute a waiver either of any other particular term or of the entire agreement.

ment, nor shall they affect its meaning, construction, or effect.

Agreement, p. 9, ¶ 19. Nothing in the Agreement, therefore, preserves non-void provisions if other provisions of the Agreement are void. Moreover, the absence of severability appears to be intentional because the parties say in the Agreement that they deem and desire that all of the distributions made in the Agreement constitute equitable distribution of their marital property.[56] Many of the Agreement's provisions make clear that the Agreement is an entire agreement of the parties and is based on all of its provisions being enforced.[57]

Certain of the Agreement's essential distributive elements are void because they violate the automatic stay of Section 362(a)(3). The Agreement has no effective severability provision and any such provision would be belied by the language in the Agreement clearly rendering the Agreement an entire, comprehensive document. To avoid doing harm to the comprehensive scope and reach of the Agreement, I can only declare the entire Agreement void because some of its major distributive provisions are void.

## B. Relief from Automatic Stay To Proceed in State Court with Divorce and Other Family Law Issues.

■■■■ Spouse asks me to grant relief from the automatic stay for two reasons. First, she asks for relief from the stay so she can proceed with the Divorce Proceeding; second, she asks for relief from the stay to enforce the Agreement. Debtor does not oppose the request for relief to allow the Divorce Proceeding to move forward, but opposes it insofar as it seeks to enforce the Agreement. Because the Agreement is void, the request for relief from the stay to enforce the Agreement is moot. Because the parties have agreed that I should grant relief from the stay to allow the Divorce Proceeding to move forward, I will do so.

Beyond the parties' agreement, however, my grant of relief from the stay is certainly appropriate in this case. As my colleague, Judge Magdalene D. Coleman, has explained in an analogous matter very recently:

Domestic relations law is an area of law with particular importance to state interests. As such, bankruptcy courts routinely modify the automatic stay to permit the conclusion of pending divorce proceedings to the extent necessary to administer the bankruptcy case. Moreover, until equitable distribution is accomplished, this Court is unable to discern not only the interests of the Debtor in the Property but also his interest in other estate assets. As a result, this Court will modify the automatic stay to permit the Movant and the Debtor to proceed with the Divorce Proceedings to obtain an adjudication of equitable distribution, as well as the awards of alimony, counsel fees and costs, maintenance and support.

*In re Chandler*, 441 B.R. 452, 464 (Bankr. E.D.Pa.2010) (citations omitted).

---

**56.** Agreement, p. 2, ninth WHEREAS clause.

**57.** *See, e.g.*, Agreement, p. 2, NOW, THEREFORE clause ("in consideration of mutual promises"); Agreement, p. 5, ¶ 7 (Debtor pays no child support if Paragraph 2 remains in full force and effect); Agreement, p. 7, ¶ 11 (releases/waivers of all claims other than any rights accruing in the Agreement); Agreement, p. 8, ¶ 13 (the distributions, payments, releases, and other provisions of the Agreement constitute equitable distribution of their property); and Agreement, pp. 11–12, ¶ 23 (the terms and conditions of the Agreement constitute full and complete payments of any and all obligations owed).

I will, similarly, grant relief with an advisory note that has come to light in the context of both this dispute and the *Chandler* case. Specifically, I will grant relief from the stay to allow hearings or other court action in the Divorce Proceeding to continue. My grant of relief from the stay allows any and all determinations by the state court about equitable distribution and domestic support obligations owed to Spouse by Debtor.[58] Domestic support obligations are defined in Section 101(14A) of the Bankruptcy Code:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable non-bankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Additionally, as noted above, Debtor and Spouse may agree or stipulate between themselves to anything relating to distribution, possession, custody, or control of any of Debtor's assets (such as the home) that are not property of the Chapter 13 estate. This latter statement does not arise from any grant of relief from the stay, but rather because the stay does not apply to such assets.

On the other hand, I recognize that a state court's determination of the parties' rights to equitable distribution and domestic support obligations and the parties' en-

---

**58.** Equitable distribution is not included within the definition of "domestic support obligations." The dischargeability of domestic support obligations and of equitable distribution is separately established in Sections 523(a)(5) and (a)(15), 11 U.S.C. § 523(a)(5) & (15). *See Kennedy v. Kennedy (In re Kennedy)*, Adv. No. 10–1020, Bankr.No. 09–12289–TPA, 2010 WL 3781066, at *3 (Bankr.W.D.Pa., Sept.15, 2010). I confess my ignorance of state court family law matters and I tip my hat to my state court judicial brothers and sisters who deal with it every day. Congress clearly never intended to authorize Bankruptcy Courts to function as federal domestic relations courts. *In re Wilson*, 85 B.R. 722, 727 (Bankr.E.D.Pa.1988). Hence, my grant of relief from the stay for the state court to determine the relative rights of Debtor and Spouse. I believe that all forms of support, alimony, and maintenance are subsumed into the bankruptcy term "domestic support obligations," 11 U.S.C. § 101(14A), but I do not wish to fetter the state court with my possibly incorrect belief.

forcement of those obligations by seizing or disposing of property of the estate differ drastically. *See Johnson*, 51 B.R. at 443, cited by *Chandler*, at p. 465. Until the parties' relative positions are finally determined and measured against Debtor's obligations under his Plan, distributing property of Debtor's estate to Spouse must be stayed. *Chandler*, at p. 465.

I therefore will not grant relief from the stay at this time to permit Spouse to seize, control, or possess property of the estate. I will consider, when approached at a later time, what property remains available to fund Debtor's Plan. Alternatively, I may determine that Debtor's Plan must go bust in the face of an immutable state court domestic relations decision and that his Chapter 13 case should be dismissed. *See Chandler*, at pp. 465–66 (Judge Coleman noted that she would review the state court domestic relations decision in light of the debtor's efforts to develop a Chapter 11 plan of reorganization).

Debtor and Spouse may attempt to settle their disputes without proceeding to the state court (other than to obtain the court's approval of their settlement agreement).[59] If settlement discussions follow, Debtor and Spouse should consider including (however peripherally) the Chapter 13 Trustee in their negotiations that might lead to a new postnuptial agreement. His concurrence when they move for relief from the automatic stay to allow the parties to enforce a new settlement agreement would be helpful to their cause. Similarly, his awareness of what is being determined by the state court judge (if no settlement is advanced) should also be helpful.

In any event, therefore, Spouse must return to this Court to move for relief from the stay to implement or enforce any state court determination or adoption of a settlement agreement pertaining to domestic support obligations or equitable distribution.

## V. CONCLUSION

Based upon the preceding findings of fact, conclusions of law, and discussion, execution of the Agreement violated the automatic stay of Section 362(a)(3). Because the violating provisions of the Agreement are not severable from the balance of the Agreement, the entire Agreement is void. I will not annul the stay to retroactively approve the Agreement. I will therefore grant Debtor's Stay Violation Motion.

I will also grant, in part, but deny, in part, the Stay Relief Motion. Spouse may proceed in state court to determine the couple's family law issues. The parties must return to me, however, with a request for relief from the stay to proceed before implementing or enforcing the state court decision. I advise both Spouse and Debtor to keep the Chapter 13 Trustee aware of their discussions and negotiations and of any decisions or rulings by the state court. The Stay Relief Motion is denied insofar as it seeks leave to enforce the Agreement.

I will issue an Order of even date herewith as set forth above.

## ORDER GRANTING THE STAY VIOLATION MOTION, DECLARING THE POST NUPTIAL AGREEMENT VOID, AND GRANTING IN PART AND DENYING IN PART THE STAY RELIEF MOTION

AND NOW, this 28 day of December, 2010, upon my consideration of (1) Debt-

---

59. This is, of course, what Debtor and Spouse attempted to do in March 2009 through the Agreement.

or's Motion To Determine Post–Nuptial [sic] Agreement Void and Entered in Violation of the Automatic Stay, filed on July 22, 2010 (the "Stay Violation Motion"), (2) the Answer of Respondent, Corrine R. Clouse ("Mrs. Clouse"), to Debtor's Motion To Determine Postnuptial Agreement Void and Entered in Violation of the Automatic Stay, filed on August 2, 2010, (3) the Motion To Lift Automatic Stay Pursuant to 11 U.S.C. § 362 To Proceed with Divorce and Enforce Post Nuptial [sic] Agreement, filed by Mrs. Clouse on August 3, 2010 (the "Stay Relief Motion"), (4) Debtor's Reply to Motion To Lift Automatic Stay Pursuant to 11 U.S.C. § 362 To Proceed with Divorce and Enforce Post Nuptial [sic] Agreement, filed on August 11, 2010, (5) the briefs filed by the parties pursuant to my direction through both the hearing scheduled on August 31, 2010, and my later Order dated November 18, 2010, requiring additional briefing, (6) oral argument by counsel for both parties on both August 31, 2010, and December 21, 2010, and (7) the findings of fact, conclusions of law, and discussion contained in my Statement Supporting Order Dated December 28, 2010, Granting the Stay Violation Motion, Declaring the Postnuptial Agreement Void, and Granting in Part and Denying in Part the Stay Relief Motion,

IT IS HEREBY ORDERED that the Stay Violation Motion is GRANTED.

IT IS FURTHER ORDERED that the entire postnuptial agreement between Debtor and Mrs. Clouse is hereby declared to be void because (1) a number of its distributive provisions violate the automatic stay of Section 362(a)(3) insofar as they deal with post-confirmation property of the Chapter 13 estate and (2) the violating provisions are not severable from the balance of the postnuptial agreement.

IT IS FURTHER ORDERED that the Stay Relief Motion is GRANTED IN PART and DENIED IN PART and Mrs. Clouse may proceed with the pending state court divorce proceeding against Debtor on the limited basis described in the Statement.